ST. PAUL, J.
 

 On March 5, 1926, the relator, Marius Brouillette, pleaded guilty to two charges, to wit: (1) Of selling intoxicating liquor for beverage purposes; and (2) of possessing intoxicating liquor for sale for beverage purposes; this last being a second offense of the same kind. On the charge of selling, he was sentenced to 60 days’ imprisonment and $200 fine, and in default of payment to serve 120 days additional; but this sentence was suspended and we are not presently concerned therewith.
 

 On the charge of possessing intoxicating liquor for sale (second offense) relator was also sentenced to 60 days’ imprisonment and $200 fine, with 120 days additional imprisonment in default of payment of the fine. This sentence was not suspended, and, as the fine was not paid, relator thereupon was due to serve a total of 180 days in prison.
 

 I.
 

 Relator’s imprisonment commenced (say) at once, but after he had served 78 days of his sentence, to wit, on May 20th, he was found to be ill, and on the advice of a competent physician was sent for treatment t'o a public hospital, where he remained confined until July 21st,' a period of 62 days additional.
 

 On July 21st he left the hospital, but he did not return to jail, and remained at large enjoying the sunshine and fresh air, which the hospital physicians (and he himself) thought would be conducive to his better health and physical welfare. And he remained at large from July 21st, as aforesaid, until October 19th, when he returned to the hospital and again remained there until November 3d, when he was finally discharged.
 

 II.
 

 One hundred and eighty days, beginning March 5th, would end August 31st. Hence (1) if the period of 78 days actually passed in jail are alone to count against his sentence, then relator has 102 days additional to serve in jail; (2) if the period of 62 days during which relator was confined in the hospital is also to count against that sentence, then relator owes only 40 days more to complete his sentence; and (3) if the period after July 21st, when relator was at large taking the fresh air and the sunshine for the benefit of his health, is likewise to be included as part of his actual imprisonment, then relator has completed his full term of imprisonment and owes nothing more.
 

 III.
 

 After relator’s second return from the hospital (November 3), he was apprehended by the sheriff and placed again in jail to serve the balance of his sentence, which the sheriff contends should be 180 days less the days actually passed in jail, and exclusive of the time during which relator was confined to the hospital, as well as of the time during which he was at large taking the fresh air and siinshine treatment. On the other hand relator contends that he has served his sentence in full.
 

 IT.
 

 Relator then applied to the district judge for a release under habeas corpus. The writ was discharged; but we cannot tell from the ruling of the trial judge exactly what portion of the sentence he considered still unserved, except that in a general way he seems to think that that time only should be counted' against the sentence which relator actually-spent in jail.
 

 And relator now applies to this court for relief.
 

 
 *49
 
 V.
 

 Act No. 251 of 1918, § 10, p. 448, provides that, “Where
 
 large numbers
 
 of prisoners are confined in it [a jail, prison or lockup] it shall be the duty of the proper authorities in charge to provide hospital quarters with necessary arrangement, conveniences, attendants, etc.” (Italics ours.) And manifestly it was not the intention of the Legislature that the time during which a prisoner was confined in the prison hospital should not be counted as part of his time in jail; otherwise a prisoner who might be unfortunate enough to incur a severe spell of sickness might have his time in jail doubled or tripled or even quadrupled. And although the law does not require that hospital quarters should be provided in prisons, unless where “large numbers” of prisoners are confined, yet this surely does not mean, in this humane age, that where there are only
 
 small numbers
 
 of prisoners confined, such prisoners are to receive no adequate care and attention should they happen to become ill. Hence,
 
 ex
 
 ipsa necessitate rei, where a prisoner falls ill in a prison which is not provided with proper hospital facilities, it follows that a humane judge and sheriff (such as these respondents appear to be, as are also most judges and sheriffs) have no other recourse but to use the hospital facilities nearest at hand; for a prisoner is no more to be done to death through neglect than by ill treatment.
 

 Hence it follows, in our opinion (and we feel sure that our view will be indorsed by enlightened public opinion generally), that a prisoner confined by illness to a hospital, whether within the confines of the prison itself or elsewhere, is entitled to count the time of such confinement against his sentence.
 

 YI.
 

 On the other hand, we cannot subscribe to the doctrine that upon his release from a hospital a prisoner is entitled to resume his status of complete freedom and go at large because he and his physicians may agree (as we all do) that fresh air and sunshine are more conducive to health and physical welfare than confinement in more or- less close quarters; on that hypothesis jails would soon become superfluous and imprisonment a mere idle formality. We are therefore of opinion that when relator, upon his discharge from the hospital, failed to return to prison, he became an
 
 escape
 
 in law, if not in fact, and that he must now return to finish that part of his sentence which had not then expired.
 

 VII.
 

 Our conclusion is that relator has served 78 days plus 62 days, or 140 days of his sentence, and has therefore 40 days additional
 
 to
 
 serve, at the end
 
 of
 
 which he is entitled
 
 to
 
 be released.
 

 We may add that the record before us is not altogether clear as to the exact time when relator first went to jail, or when he first went to the hospital, and we may have given him credit for some days more than he may be entitled to; but we prefer to err on the side of mercy rather than deprive him even of a single day of the liberty to which he may be entitled, and hence we will let the matter stand as we have put it above, regardless of the possibility that relator may eventually have served some days less than he should.
 

 The view we have taken requires of course that the refusal of the trial judge to order relator’s release
 
 at this time
 
 should be approved, and accordingly that the writs herein issued be discharged.
 

 Decree.
 

 The writs herein issued are therefore discharged.
 

 O’NIELL, C. J., is of the opinion that the relator’s sentence was for a continuous term, which has expired and been served, and that he should be released.-