

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Texas Prison System
Bureau of Records and Identification
Huntsville, Texas

Attention: Mr. J. C. Roberts

Dear Sir:

Opinion No. O-5721
Re: Insane Prison Inmates.

We have carefully considered your request for an opinion of this department upon the question of computing time and over-time credits of those convicts who have been adjudged insane and committed to a state hospital for the insane. We quote in part from your letter as follows:

"As custodian of the records of the inmates of the Texas Prison System, I am endeavoring to comply with the provisions of the recent commutation law contained in S. B. 239 made effective as of May 22, 1943.

"In setting up the individual records in accordance with this law, I find that this Bureau still carries on its records, many inmates who were at various times adjudged insane by the Walker County courts and committed to state institutions for the insane, particularly the Rusk State Hospital. I am aware of the fact that we shall give each such inmate credit for any and all commutation of time and overtime credits earned to and including the date of removal from the penitentiary, however the question has arisen as to what the inmate would be entitled to after leaving prison and while being confined to the Asylum.

"I should like very much to have your opinion as to whether these inmates are entitled to the benefits of the commutation of time as prescribed by law, or should they be cleared of our records entirely, or just how they should be trusted."

We have found no Texas statutes upon the topic of whether or not the time a convict spends in a state hospital as stated in your request is to be counted as time served on his prison sentence. We have likewise been unable to locate any judicial authority in Texas

upon this subject. In fact, our search has disclosed but two cases wherein the court has discussed the question of whether or not the time which a convict, after conviction and commitment to a penal institution, spends in a state hospital is to be credited on his sentence. In the case of State of Minnesota v. J. H. Jorgenson, 62 A.L.R., p. 244, it was held that where a person while serving a sentence in a county jail is duly committed to a state hospital for the insane and there confined, the time runs on his sentence while so confined in the latter institution. The court pointed out however that a Minnesota statute specifically provided that a prisoner serving time in a state prison, who is adjudged insane and committed to a state insane asylum, shall have the time he is confined in the latter counted as part of the term of his sentence. Since Texas has no similar statute we do not think this case can be cited as an authority for the proposition that the time spent in an insane asylum should be counted as part of the sentence.

In the case of State v. Bouillette, 163 La. 46, 111 So. 491, the court held that the time a prisoner was confined in the prison hospital should be counted as part of his time in jail. We likewise do not believe this case is any authority upon the subject under consideration since our state insane asylums are not under prison supervision.

Some inference to the solution of this question can be ascertained from certain statutes and decisions upon the insane and the punishment of criminals.

Article 2 of the Penal Code provides:

"The object of punishment is to suppress crime and reform the offender."

Article 34 of the Penal Code in part reads:

". . . . No person who becomes insane after he is found guilty shall be punished while in such condition."

Articles 925 and 928 of Vernon's Code of Criminal Proce - dure respectively provide:

"Upon the trial of an issue of insanity, if the defendant is found to be insane, all further proceedings in the case against him shall be suspended until he becomes sane."

"If the defendant becomes sane, he shall be brought before the court in which he was convicted or before the District Court in the County in which the defendant is located at the time he is alleged to have become sane; and,

> a jury shall be impaneled in the Court before which
> such defendant is brought to try the issue of his
> sanity; and, if he is found to be sane, the convic-
> tion shall be enforced against him as if the pro-
> ceedings had never been suspended."

If the purpose of our criminal code is in part to reform the offender, certainly this purpose would not be reached by punishing a person who is insane; efforts to reform such a person would in most instances be futile. Also as indicated by Article 34 above quoted, it appears to have been the intention conveyed thereby that insane persons should not be subject to any punishment while in such a state. As shown by the above quotations from the Code of Criminal Procedure, a person who is guilty of an offense and is found to be insane, all proceedings as to the crime should be suspended. After such a person has regained his sanity, he is returned to answer the criminal charges so made against him.

The statutes we have allowing convicts over time for good conduct are enacted "in order to encourage prison discipline." See Article 6184 l., Vernon's Civil Statutes of Texas.

In 12 Tex. Jur., p. 818, we find the following language:

> "A person who has been sentenced to imprisonment
> in the penitentiary or a jail can serve his sentence
> only by actual incarceration within its walls; no other
> kind of custody will answer or discharge such imprison-
> ment. . . ." (Citing Sartan v. State, 10 Crim. App.
> 651, 38 Am. Rep. 649.)

There are some exceptions to the rule of law announced in the foregoing quotation, such as are found in Article 775, Vernon's Code of Criminal Procedure, as amended in 1931, and Article 6203, Revised Civil Statutes, but they have no application to the question we are here considering.

We are of the opinion that the foregoing discussion dis-closes a legislative policy in Texas of not subjecting insane persons to criminal punishment and that the time spent by an insane in a state hospital should not be counted on his sentence as a criminal.

It is further our opinion that the individual records of these convicts who are in insane institutions should not be completely retired for some of these individuals may at some future date regain his sanity. If such a contingency should arise, the records would be needed in order to have a complete history of each case, as such a person would be returned to the proper penal institution to complete the sentence temporarily suspended by his insanity.

          The foregoing conclusions precluded any discussion of
other matters contained in your request.

                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS


                              By s/Robert O. Kooh
                                 Robert O. Kooh
                                 Assistant

ROK:db:wc                      ·

APPROVED JAN. 26, 1944
 s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By BWB Chairman