[No. 30337. *En Banc.* November 30, 1948.]

*In the Matter of the Application of* LOUELLA WRIGHT *for a Writ of Habeas Corpus.*[1]

*Wm. J. Conniff*, for appellant.

*Dana E. Harper* and *Howard V. Doherty*, for respondent.

[1]Reported in 200 P. (2d) 478.

SCHWELLENBACH, J.—This is an appeal from a judgment denying a petition for a writ of *habeas corpus*.

Louella Wright pleaded guilty in the justice court presided over by Judge Filion, in Clallam county, to the charge of possession of intoxicating liquor with intent to sell the same. She was fined three hundred dollars and costs, and sentenced to serve sixty days in the county jail, thirty days of which sentence was suspended.

In order to better understand the facts, we quote rather extensively from the testimony given at the hearing on the petition for the writ of *habeas corpus*.

Deputy Sheriff J. W. Stewart testified:

"Q. I hope I have the right deputy. Mr. Stewart you are the deputy sheriff. On or about the 18th of April one Louella Wright received a sentence in Justice Court? A. Yes she was sentenced to serve thirty days in jail. Q. What happened? A. Do you want me to tell the procedure, what happened? Q. Did you ever get her custody or was she ever committed to jail? A. She never was taken into custody. Q. What happened? A. I talked to Mr. and Mrs. Wright, to Mrs. Wright alone first and she said that she was sick and under a doctor's care and that Mr. Wright had gone to town to get a doctor, and I told her that if she wanted to come down stairs in the office that she could come down there and wait and she came down and waited there until Mr. Wright came back. She walked down with another gentleman that was with her and I walked down with them and then he left and Mr. Wright came back shortly after and said that he had contacted Dr. McGillivray and that the doctor was coming up in a very short time to see Mrs. Wright, and she sat there and waited until the doctor came in and he came in possibly an hour later and I talked to Dr. McGillivray and Mrs. Wright and told them that they could go into the private office that we have if he wanted to talk to her privately, and they were in there possibly ten minutes and Dr. McGillivray came out and said that Mrs. Wright needed hospitalization and that he was going to have to take her to the hospital. Q. And she did go to the hospital and has been there ever since as far as you know? A. Yes sir. Q. She has never been in your custody? A. No. Q. Has she ever been placed in jail? A. No. Q. Has she ever served one minute? A. No."

Under cross-examination he testified:

"Q. You testified that Dr. McGillivray and Mr. Wright and Mrs. Wright were in your office? A. Yes. Q. That was after you had her commitment from up stairs? A. I don't know whether we had the commitment or not. He doesn't generally bring them down right away. Q. But she was there in the sheriff's office wasn't she? A. She was sitting in the outer part of the office where all the people who come in there wait, it is outside the counter. Q. She was in the sheriff's office? A. Yes."

Jack Abbott, the office deputy sheriff, testified: that Mrs. Wright did not serve any part of her sentence because Dr. McGillivray stated that she should be committed to the hospital; that she was taken to the hospital by Deputy Sheriff Breece, although her husband had his car there ready to take her; that, at the time Breece took her, the husband was down in her attorney's office; that they asked the hospital to notify them when she was to be released; that, after being hospitalized for five days, they were notified that she was leaving; that he went over to take her into custody, and she said that she had to stay in bed according to the doctor's orders, and she decided to stay in the hospital instead of going to jail.

Mrs. Virginia Smith, employed at the hospital, testified that, when Mrs. Wright was about to be released, after five days, her husband came to take her home *and asked for his bill*; and she then remembered that she was to call the sheriff's office. This was done, and Mr. Abbott came, with the result as heretofore related. Mrs. Wright's chart showed that after that date her temperature went up to 101 degrees. At the conclusion of Mrs. Smith's examination, the court asked her:

"THE COURT: Was she under any restraint whatever, was there anyone to keep her in her room? A. No. Q. Was there any directions given that she was to be kept in her room? A. The only thing the sheriff's office, it didn't come direct to me, it came through one of the other members of the office, that they were to be notified when she was to leave. Q. When she was well enough to leave? A. Yes."

Deputy Breece, who took her to the hospital, testified:

"Q. Do you recall on the 18th day of April 1947 a request relating to Louella Wright in Justice Court. A. I do. Q. What was done with her immediately following that judgment? A. She came down to the office and I wasn't in when she came down but I was there when the doctor completed his examination and as I walked in they were coming out of the office and he said 'can you take this lady to the hospital she will have to be hospitalized as she had a slight congestion of one lung' and I said 'well I can take her' and that was all that was said that I know of. Q. Did you take her over? A. Yes. Q. And that was at the request of her doctor? A. I presume so, that is the way I understood it he asked me 'can you take her to the hospital she will have to be hospitalized she has a congested lung,' a slight congestion I think he said."

Harold Wright, the husband of Mrs. Wright, testified that after the trial they went down to the sheriff's office; that the sheriff took her down there; that he, Wright, called the doctor; that the doctor ordered her to be hospitalized and told the sheriff that she was in no fit condition to go to jail; that, after she had been at the hospital five or six days, he and the doctor thought it would be better if she could stay home and be in bed; that, when he started to take her home, the deputy sheriff was there and told her that she had her choice to either go to jail or go back in the hospital. She was in the hospital at the time of the *habeas corpus* hearing.

Although there is a conflict in the testimony, one fact appears to be perfectly clear; this lady did not want to go to jail.

At the hearing, the trial court found that there was no restraint of her liberty during the time that she was in the hospital, and denied the writ. In its oral opinion, the trial court stated that she was booked. We have carefully examined the record and do not find any such testimony. As to that statement, the trial court was in error.

The question for our determination is whether or not, under the facts of this case, appellant was in "custody" and therefore served her sentence. There is no question but that she never spent one minute in jail.

■ The majority rule is stated in an annotation in 72 A. L. R. 1271, as follows:

"According to the great weight of authority, if there is no statute providing otherwise, delay in taking the defendant into custody after conviction and sentence in no way releases the convict from the necessity of suffering the full penalty imposed by the sentence. 'Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. Therefore the expiration of time without imprisonment is in no sense an execution of the sentence. Accordingly, where the judgment and sentence is imprisonment for a certain term, and from any cause the time elapses without the 'imprisonment being endured, it will still be a valid, subsisting, unexecuted judgment. . . . And therefore, where a convicted defendant is at liberty and has not served his sentence, if there is no statute to the contrary, he may be rearrested as for an escape, and ordered into custody on the unexecuted judgment, and the result is the same if he escapes to another jurisdiction and is brought back, though by illegal means.' 8 R. C. L. 259. When a convict is not taken into custody after final sentence is pronounced, it becomes his duty to surrender himself to the proper authorities, and if no order committing him has been issued he must demand such issuance, otherwise he will be considered to have acquiesced in the delay though he has done nothing actively to avoid the penalty imposed by the sentence."

Appellant relies upon *State ex rel. McCoske v. Kinnear,* 145 Wash. 686, 261 Pac. 795; *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023, L. R. A. 1918C, 1158; *Spicer v. Williamson,* 191 N. C. 487, 132 S. E. 291, 44 A. L. R. 1280; *In re Cavitt,* 170 Wash. 84, 15 P. (2d) 276; *State ex rel. Siehl v. Jorgenson,* 176 Minn. 572, 224 N. W. 156, 62 A. L. R. 244; and *State v. Brouillette,* 163 La. 46, 111 So. 491.

In *State ex rel. McCoske v. Kinnear, supra,* the prisoner, upon being sentenced to the penitentiary by the superior court, spent some time in the county jail prior to being transported to the penitentiary. The question in that case was: When did he become eligible for parole? We said, after quoting Rem. Comp. Stat., § 1746:

"This section is plain and unambiguous, and a prisoner becomes eligible for parole, upon the expiration of his full minimum sentence, from the date fixed in accordance with this statute, regardless of when he may actually enter the institution."

*Kusah v. McCorkle, supra,* was an action against the sheriff for damages sustained by a prisoner due to injuries inflicted upon him by a man "then confined in the same jail and custody under a charge of insanity lodged against him by the county attorney."

Neither of the above cases can be of any assistance in determining the problem now before us.

In *Spicer v. Williamson, supra,* one Camel had been arrested by the deputy sheriff and placed in the custody of the sheriff on a charge of robbery and larceny. As an incident to his arrest, he had been shot and wounded by the deputy. The sheriff took him to the hospital because of his condition. In an action against the county for services rendered by the physician, it was held that the county was liable because the services had been ordered by the sheriff while Camel was under his custody and control as his prisoner. In the case at bar, the husband arranged to pay the hospital bill. Hospitalization was ordered by appellant's doctor and not by the sheriff.

*In re Cavitt, supra,* was a case in which the petitioner had been sentenced to serve thirty days in jail and had actually been committed, and he thereafter remained in the custody and under the control of the sheriff for the full term of his sentence. However, for a period of twenty-seven days during his term, he did manual labor upon a privately-owned farm some distance from the jail. This work was at the direction of the sheriff, who took him to and brought him from the place of work in an automobile owned by the county. He spent his nights in the jail during the entire term. We held:

"The mere fact that the petitioner was not actually in jail during a part of the time is immaterial. He was in the custody, and subject to the control, of the sheriff. Although he may have been willing to enter upon outside duties, assuming even that it was to his advantage, that does not

change the situation. He could not have compelled such an accommodation to himself, nor was his liberty wholly unrestricted when it was accorded. He was still subject to disposition by the sheriff, and was, in fact, held to the same requirements as all other trusties of the jail.

"Nor does the fact that the petitioner was permitted to earn a small compensation for a part of the time, alter the case. It is conceivable that a man, even while in close confinement, might, through his native ability, produce something from which he might secure a monetary consideration. But that does not free him from the restraint which the sentence has imposed upon him. The petitioner was still under the supervision of the sheriff by virtue of Rem. Comp. Stat., § 10195, and, under the *mittimus* from the clerk, the sheriff was required by law to execute the sentence. Rem. Comp. Stat., § 2207."

In *State v. Brouillette, supra,* the petitioner had been convicted of possessing intoxicating liquor for sale and was sentenced to sixty days' imprisonment and a two-hundred-dollar fine, with one hundred twenty days' additional imprisonment in default of payment of the fine, which he did not pay, thus making his total sentence one hundred eighty days. After serving seventy-eight days, he became ill and was sent to the hospital for treatment. He remained in the hospital for sixty-two days and was then released; he did not return to the jail but remained at large enjoying the sunshine and fresh air, which the physicians (and he himself) thought would be conducive to his better health and physical welfare. He was later apprehended by the sheriff, and he then applied for a writ of *habeas corpus,* contending that he had fully served his term. The Louisiana court was of the opinion

" . . . that a *prisoner* confined by illness to a hospital, whether within the confines of the prison itself or elsewhere, is entitled to count the time of such confinement against his sentence." (Italics ours.)

The court then added:

"On the other hand, we cannot subscribe to the doctrine that upon his release from a hospital a prisoner is entitled to resume his status of complete freedom and go at large because he and his physicians may agree (as we all do) that

fresh air and sunshine are more conducive to health and physical welfare than confinement in more or less close quarters; on that hypothesis jails would soon become superfluous and imprisonment a mere idle formality. We are therefore of opinion that when relator, upon his discharge from the hospital, failed to return to prison, he became an *escape* in law, if not in fact, and that he must now return to finish that part of his sentence which had not then expired."

In *State ex rel. Siehl v. Jorgenson, supra,* relator had been sentenced to the county jail for a period of eighty days. He was committed on the day of his sentence to the county jail. Three days later, while so confined, he was duly adjudged insane and committed to the state insane asylum. Upon his release from the institution, which was after the expiration of the term of his sentence, he was returned to the county jail. He instituted *habeas corpus* proceedings and was ordered released. The court held:

"During all the time relator was in the insane hospital he was restrained of his liberty by law. He was not there or out of the jail of his own volition. . . .

"From the moment relator began his jail term and for the full period of his sentence he was by law restrained of his liberty and confined in quarters not of his choosing. And it seems to us that when a person who has begun to serve a jail sentence is by legal process removed therefrom and detained in custody elsewhere the time he is thus elsewhere applies upon his sentence."

A situation very similar to the case at bar was presented in *Riggs v. Sutton,* 113 Neb. 556, 203 N. W. 999. Riggs was convicted of the illegal possession for sale of intoxicating liquor and was sentenced to sixty days in jail. After the warrant of commitment was delivered to the sheriff, he was requested by Riggs to delay the execution of the warrant because of illness in the family, and in order to harvest crops, which request was granted. After several months, Riggs was taken into custody and *habeas corpus* proceedings were instituted. It was contended that Riggs' sentence began to run from the date sentence was pronounced and expired sixty days thereafter, though he may have suffered no

actual imprisonment, and that, therefore, his incarceration at a later date was without legal authority. The court held:

"A number of cases from this and other jurisdictions are cited and relied upon to sustain petitioner's position. The cases cited and relied upon from this jurisdiction are *In re Fuller*, 34 Neb. 581, and *McGinn v. State*, 46 Neb. 427.

"In the *Fuller* case it was held that 'the term of imprisonment of one sentenced to the penitentiary dates from the sentence and not from the delivery of the prisoner to the warden of the penitentiary.' In determining what effect should be given to the language used in the opinion, consideration should be given to the facts then before the court. Fuller had been convicted of an offense and sentenced to 14 months' imprisonment in the penitentiary. From the date of the sentence he was in custody and imprisoned in the county jail, where he remained for some weeks before being transported to the penitentiary. The warden of that institution refused to discharge Fuller from imprisonment at the expiration of 14 months from the date of sentence, allowing for good time earned, and contended that the time elapsing between the date of sentence and the receiving of the prisoner at the penitentiary should not be counted as a part of the term of imprisonment. The only question properly before the court and decided in the case was that the time Fuller was in the county jail, awaiting transportation to the penitentiary, should be counted as a part of his sentence. The *Fuller* case is cited in the *McGinn* case, but the latter is not a similar case and has no bearing upon the question in controversy. There are a number of decisions cited from other jurisdictions which support the contention of petitioner. Among them are the following: *In re Markuson*, 5 N. Dak. 180; *In re Webb*, 89 Wis. 354, 27 L. R. A. 356.

"We are of the opinion that the better view, the one supported by the stronger reason and the greater weight of authority, is that, in the absence of statute fixing the time when a sentence of imprisonment in a criminal action shall begin, it does not begin until the defendant is taken into custody or offers to surrender himself to the custody of the proper officer, and that, when a warrant of commitment has been issued and delay occurs before its execution, if defendant asks for or acquiesces in the delay, then he cannot take advantage of it. The time for executing a sentence of imprisonment, or for commencement of its execution, is not an essential element of the sentence. The essential part of the sentence is the punishment, including the kind and

amount thereof, without reference to the time that it is to be inflicted.

"A discussion of the question here involved may be found in 8 R. C. L. 259, sec. 267, in the following language: 'The judgment is the penalty of the law, as declared by the court, while the direction with respect to the time of carrying it into effect is in the nature of an award of execution. Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. Therefore, the expiration of time without imprisonment is in no sense an execution of the sentence. Accordingly where the judgment and sentence is imprisonment for a certain term, and from any cause the time elapses without the imprisonment being endured, it will still be a valid, subsisting, unexecuted judgment. And where a convict is permitted to absent himself from prison the time when he is absent is no part of the sentence. And therefore where a convicted defendant is at liberty and has not served his sentence, if there is no statute to the contrary, he may be arrested as for an escape, and ordered into custody on the unexecuted judgment, and the result is the same if he escapes to another jurisdiction and is brought back, though by illegal means.'

"A case very similar to the one under consideration is that of *Miller v. Evans*, 115 Ia. 101. There the sentence was for a term in the county jail and the sheriff neglected to execute the mittimus until after the term of defendant's incarceration would have expired, had it begun on the day of sentence, and it was held 'that the expiration of the time without imprisonment would not be considered in satisfaction of the judgment—the time at which the sentence is to be carried out being directory, and not a part of the judgment—and a subsequent commitment to jail was authorized.' Other authorities sustaining the views herein expressed are: *Ex Parte Eldridge*, 3 Okla. Cr. Rep. 499, 27 L. R. A. n. s. 625; *State v. Cockerham*, 24 N. Car. 204; *State v. Abbott*, 87 S. Car. 466; *Neal v. State*, 104 Ga. 509, 42 L. R. A. 190; *Gray v. State*, 107 Ind. 177; 16 C. J. 1335, sec. 3142.

"It is apparent that Riggs has not suffered the punishment which his offense merited, and which was adjudged against him. It would be a mockery to hold that the mere neglect of ministerial officers to enforce the judgment of a court could annul it and hold it for naught. The court itself was powerless, after the expiration of the term, to set aside or suspend

the judgment rendered, and, if petitioner's contention should be sustained, it would permit a ministerial officer to do what the court itself is not authorized to do. It would permit ministerial officers, through neglect or for any other reason, to nullify the judgment of the court and render the criminal law without force or effect. We are satisfied that the trial court properly refused to discharge Riggs from the custody of the officer until he had served his sentence in jail.

"The judgment of the district court is AFFIRMED."

The form of commitment upon sentence in justice court is found in Rem. Rev. Stat., § 1935 [P.P.C. § 149-1], as follows:

"The State of Washington, } ss.
 "County of............................. }

"To any Constable and the Keeper of the County Jail of said County.

 "Whereas, at the justice's court held at my office in said county for the trial of C D, for the offense hereinafter stated, the said C D was convicted of having on the.................. day of.........................., 18....., in said county, committed (here state the offense), and upon conviction the said court did adjudge and determine that the said C D should be imprisoned in the county jail of said county, for .............. days, therefore, you, the said constable, are commanded, in the name of the state of Washington, forthwith to convey and deliver the said C D to the said keeper; and you, the said keeper, are hereby commanded to receive the said C D into your custody in said jail and him there safely keep until the expiration of said.................... days, or until he shall thence be discharged by due course of law.

 "Dated this ..........day of.........................., 18..............
 "J P, Justice of the Peace."

In *Ex Parte Wyatt*, 29 Tex. App. 398, 16 S. W. 301, Wyatt was convicted of exhibiting a monte bank for the purposes of gaming, and was sentenced to serve ten days in jail. The sheriff did not imprison him because at the time he was afflicted with rheumatism, but he was allowed to go at large upon an agreement that, when he was able, he would serve out his sentence. He later was arrested and placed in jail, whereupon he sued out a writ of *habeas corpus.* In denying the writ, the court said:

"It is claimed in behalf of appellant that from the time the judgment placed him in the hands of the sheriff he was in his legal custody, and that being in his legal custody, whether imprisoned in jail or not, whenever the ten days had expired he was entitled to his discharge, as much so as though he had actually served out his time in jail; and in effect he claims that his agreement with the sheriff is of no validity and void, because the sheriff had no authority to make any such agreement and permit him to go at large after he had been legally committed to jail.

"Our statute, Code of Criminal Procedure, article 51, provides that 'when a prisoner is committed to jail by lawful warrant from a magistrate or court, he shall be placed in jail by the sheriff; and it is a violation of duty on the part of any sheriff to permit a defendant so committed to remain out of jail,' etc.

"Again, it is provided that 'when by the judgment of the court a defendant is to be imprisoned in jail the sheriff shall execute the same by imprisoning the defendant for the length of time required by the judgment; and for this purpose a certified copy of such judgment shall be sufficient authority for the sheriff.' Code Crim. Proc., art. 817.

"And 'when a defendant has remained in jail the length of time required by the judgment he shall be discharged, and the sheriff shall then return the copy of the judgment or the capias under which the defendant was imprisoned to the proper court, stating how the same had been executed.' Code Crim. Proc., art. 819.

"It is manifest from these provisions of our law that whenever a party is committed to jail by order of the court it means imprisonment in jail; and no other kind of custody, whether agreed to by the sheriff or not, will answer or discharge such punishment. The sheriff has no right, no matter what his motives, whether of humanity or not, to commute or alter this punishment, and any act of his doing so is a violation of his duty and absolutely void. *Clark v. The State*, 3 Texas Ct. App. 338. He must put the prisoner in jail. If he be too sick to stand such confinement, and his life is likely to be endangered thereby, it is not for the sheriff to relieve him, but his remedy is by *habeas corpus*, as provided by art. 155, Code of Criminal Procedure. Until he has served the allotted time in jail he has not complied with the judgment, nor has he discharged it. The fact that he was allowed to go at large by the sheriff illegally for more than ten days, and that if during that time he had been in prison the

judgment would have been discharged, does not give him the right to claim a discharge simply on account of the fact that the ten days for which he should have been imprisoned have already elapsed. The agreement of the sheriff to permit him to go at large being absolutely void, the law, for such time, will treat him as a prisoner at large without authority; in other words, as an escaped prisoner."

 The question therefore resolves itself down to this. At the time appellant went to the hospital, had her jail sentence actually commenced to run, or was she in custody? It would appear from the cases that, if she had been confined in jail for one hour and then had taken sick, and had been transported to the hospital by the sheriff, *as his prisoner*, then she should have been given credit on her jail sentence, for time actually spent in the hospital. We see, from the cases, where statements are made to the effect that a term commences to run from the date of the sentence, that such statements have always been made incidental to situations where the prisoner has been sentenced to the state penitentiary and has remained in the county jail for some time, awaiting transportation to the penitentiary.

Here the appellant was never confined in jail. Her jail sentence never commenced to run. She was taken to the hospital by the deputy sheriff as a favor to her, *and not in his custody as his prisoner*. The sheriff did not call the county physician to ascertain whether she needed hospitalization. She was not his prisoner. She was a free agent. Her doctor and her husband, not the sheriff, arranged for her hospitalization. During the time she was in the hospital, she was not under guard, nor in custody, but was there of her own volition, at her own expense. The sheriff was only interested in taking her into custody, upon her release from the hospital, in order that she could serve her jail sentence of thirty days.

Her custody and the serving of her jail sentence were held in abeyance pending her being physically able to be confined in jail.

The judgment is affirmed.

Mallery, C. J., Beals, Steinert, Robinson, and Jeffers, JJ., concur.

Millard, J. (dissenting)—I dissent. Louella Wright filed a petition in the superior court for Clallam county for a writ of *habeas corpus*, claiming that the sheriff of Clallam county refused to liberate her from his custody although she had served the period of time for which she was sentenced.

The cause was tried to the court, which stated that the petitioner "was booked, but was not taken into the jail before she left for the hospital." The court further stated that petitioner was not under any kind of restriction during the time she was in the hospital, hence, she was not in custody during the time she was in the hospital. On the theory that the petitioner had never been taken into the custody of the sheriff for the purpose of serving her sentence, and that she had served no part thereof, judgment was entered denying the petition for the writ of *habeas corpus*. Petitioner appealed.

The facts are summarized as follows: When Louella Wright pleaded guilty, April 18, 1947, in the Port Angeles justice court, to the charge of having intoxicating liquor in her possession for the purpose of sale, she was fined three hundred dollars and costs and sentenced to serve sixty days in the county jail, thirty days of which sentence were suspended. The fine and costs were paid at once, and appellant was taken by the sheriff to his office at the county jail, but she was not taken into, nor confined within, the jail.

When the prisoner, who was suffering from congestion in one lung, arrived at the sheriff's office, her physician was called. When he concluded his examination of the woman, the physician advised hospitalization; whereupon, a deputy sheriff placed her in care of a local hospital, with instructions that the sheriff's office be notified if the patient attempted to depart from the hospital. Five days after she was taken to the hospital, the attending physician consented to release the patient from the hospital if she would go home and there remain in bed for two or three weeks.

While Mrs. Wright's husband was at the hospital preparing to escort his wife to their home, the sheriff was notified that the patient was being prepared for departure from the hospital. One of the sheriff's deputies went to the hospital and informed Mrs. Wright she had the option of remaining in the hospital or being confined in the jail. The record is clear that Mrs. Wright, who returned to her bed in the hospital, where she remained until May 19, 1947, and was being treated by a physician at the time of this *habeas corpus* proceeding, was not feigning illness, but that she was a very sick woman.

The trial court was not of the view that appellant had not been in custody of the sheriff when she was taken to the sheriff's office. The court did not hold that appellant had not been in custody prior to the time she was placed in the hospital, and subsequent to the time she was sentenced. The writ was denied for the reason that the court deemed that there was no restraint of appellant's liberty during the period she was in the hospital; therefore, appellant was not in custody while she was in the hospital.

The sentence, imposed by the justice of the peace April 18, 1947, that appellant serve thirty days in jail, commenced immediately, and she was automatically, as a matter of law, in the custody of the sheriff, whose duty it was to execute the sentence.

"The law contemplates that, after a prisoner has been tried and sentenced, he will be committed at once to the custody of the prison officials where the sentence is to be executed. Until such delivery, he is in the legal custody of the sheriff of the county." 18 C.J.S. 110, § 9.

In *State ex rel. McCoske v. Kinnear*, 145 Wash. 686, 261 Pac. 795, we construed Rem. Rev. Stat., § 1746 [P.P.C. § 769-19], and the rule we enunciated is applicable in misdemeanor cases in courts of justices of the peace, as the statute is in affirmation of the common law. Rem. Rev. Stat., § 1746, provides that,

"In the event no appeal be taken from the judgment of conviction of a felony, the term of sentence imposed upon such judgment shall commence to run from the date of the

imposition thereof. In the event an appeal be taken from such judgment of conviction, and upon such appeal the judgment be affirmed, the term of sentence shall commence to run from the date upon which the remittitur shall be filed in the lower court."

In *State ex rel. McCoske v. Kinnear, supra,* we held that where no appeal is taken, the term of the sentence begins from the date of imposition of the sentence. In the case at bar, the appellant, after sentence, was immediately taken into custody by a deputy sheriff and taken to the sheriff's office at the county jail, where she was booked. Then a physician was summoned to visit and examine appellant, who, upon the report and determination of the physician that she required immediate hospitalization, was placed in the Port Angeles general hospital by the sheriff. If the sheriff had not made this disposition of appellant, he would have been required to confine her in the county jail, as he could not legally have released her to permit her to recover her health prior to the time she commenced to serve her sentence within the jail.

The authorities are uniform that, upon conviction and sentence of a prisoner, it is the duty of the sheriff to take that prisoner into custody and dispose of such prisoner in accordance with the judgment of the court. It would be unlawful for the sheriff to permit the prisoner to go at large. 13 C. J. 920, § 16.

In *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023, L.R.A., 1918C, 1158, we construed Rem. Rev. Stat., § 10195, [P.P.C. § 680-11], which defines the duties of the sheriff respecting prisoners. When the sheriff accepted the recommendation of the doctor and placed the appellant in the hospital, he was performing his statutory duty.

"It is plain that the sheriff's duty in regard to prisoners or others in his lawful custody is twofold; one to the state to keep and produce the prisoner when required, and the other to the prisoner to keep him in health and safety." *Kusah v. McCorkle, supra.*

In *Spicer v. Williamson,* 191 N.C. 487, 132 S.E. 291, 44 A.L.R. 1280, a physician sought recovery from the board of

county commissioners for professional services rendered to a prisoner in the custody of the sheriff of the county in question. The supreme court of North Carolina, in holding that the duty of the board of county commissioners to provide for necessary medical attention to a prisoner confined at the county jail extended to a person in the lawful custody of the sheriff, who is unable, because of the condition of the prisoner, to take him at once to jail, said:

"It is clearly the duty of the board of commissioners of a county, in this State, as prescribed by statute, to provide for necessary medical attention to ·a prisoner confined in the county jail, whether such prisoner has been committed to jail as the result of a preliminary trial, or upon a final judgment on his conviction of a violation of law. The board of commissioners owes no less duty to a person, lawfully in the custody of the sheriff, awaiting a preliminary trial, and confined in jail, because he is unable to give bond for his appearance at such trial. A reasonable construction of these statutes extends this duty of the board to a person in the lawful custody of the sheriff, who is unable, because of the condition of the prisoner, to take him at once to the jail. The suggestion in the brief for the board of commissioners filed in this Court, that the board owes no duty to provide for necessary medical attention to a prisoner until he has actually been placed in jail, does not commend itself to us as within a reasonable or necessary construction of the statutes applicable."

The North Carolina statute is not materially different from Rem. Rev. Stat., § 10195.

It should be emphasized that the court did not hold that appellant Wright had never been in custody, but merely found that she was not in custody during the time she was in the hospital. If she was in custody prior to the time she was placed in the hospital, her sentence had commenced, and only an escape under such circumstances would stop the sentence from running. While she was in the hospital, the liberty of appellant was restricted. She was not permitted to go home, but was required to return to her bed in the hospital or to accept quarters in the county jail. Appellant was in the lawful custody of the sheriff.

The contention that "custody" means nothing less than actual imprisonment is not tenable. When one is restrained of his liberty, he is in "custody." To be detained or restrained by virtue of a lawful authority, is custody. When appellant was sentenced to serve sixty days in the county jail, thirty days of which were suspended, she was taken by the sheriff to his office in the county jail. Upon the sheriff was imposed the duty of restraining appellant, in whose charge she was until appellant had complied with the sentence, or been discharged in due course of law.

Appellant was lawfully, by reason of the consent of the sheriff thereto, in the hospital for a period of thirty days. That time should be counted as part of the period she was required to serve, as imposed by the sentence. In 24 C.J.S. 1229, § 1995, the rule is announced that the time a prisoner lawfully spends in a hospital for a physical or mental illness should be counted as part of his term, even if the hospital is beyond the confines of the prison. See *State v. Brouillette,* 163 La. 46, 111 So. 491, and *State ex rel. Siehl v. Jorgenson,* 176 Minn. 572, 224 N. W. 156, 62 A. L. R. 244.

In *In re Cavitt,* 170 Wash. 84, 15 P. (2d) 276, Cavitt had been convicted of the crime of unlawfully hunting for deer and was sentenced to thirty days imprisonment in the county jail, and was directed to pay a fine of three hundred dollars and costs. The judgment directed that petitioner be remanded to custody of the sheriff, to be by him detained in the county jail until the sentence, fine, and costs had been satisfied, in accordance with law. We said:

"The petitioner was thereupon committed, and he thereafter remained in the custody and under the control of the sheriff for the full term of his sentence. It appears, however, that, during a portion of his term of sentence, petitioner was assigned as a trusty, performing the usual duties of such persons in and about the jail and upon the court-house lawn. For a period of twenty-seven days, he did manual labor upon a privately owned farm some distance from the jail, for which he received a compensation of one or two dollars per day. This outside work, however, was at the direction of the sheriff, who took him to, and brought him from, the place of work in an automobile owned by the

county. Petitioner spent his nights in the jail during the entire term."

After the full expiration of the petitioner's sentence, the sentencing judge learned that the prisoner had spent twenty-seven days of his sentence upon a farm, not his own, receiving the compensation above mentioned. The sentencing judge ordered him to be taken into custody and detained in the county jail for an additional period of twenty-seven days. In granting writ of *habeas corpus,* we said:

"The mere fact that the petitioner was not actually in jail during a part of the time is immaterial. *He was in the custody, and subject to the control, of the sheriff.* Although he may have been willing to enter upon outside duties, assuming even that it was to his advantage, that does not change the situation. He could not have compelled such an accommodation to himself, nor was his liberty wholly unrestricted when it was accorded. He was still subject to disposition by the sheriff, and was, in fact, held to the same requirements as all other trusties of the jail.

"Nor does the fact that the petitioner was permitted to earn a small compensation for a part of the time, alter the case. It is conceivable that a man, even while in close confinement, might, through his native ability, produce something from which he might secure a monetary consideration. But that does not free him from the restraint which the sentence has imposed upon him. The petitioner was still under the supervision of the sheriff by virtue of Rem. Comp. Stat., § 10195, and under the *mittimus* from the clerk, the sheriff was required by law to execute the sentence. Rem. Comp. Stat., § 2207. The court, as such, no longer had authority over him.

"For these reasons, we are satisfied that the petitioner was entitled to a writ of habeas corpus; and upon a hearing thereof, we conclude that he is now entitled to have an order from this court immediately discharging him from further custody under the judgment. An order to this effect will go forward at once." (Italics ours.)

I agree with the argument of counsel for the state that, in the absence of a statute providing otherwise, delay in taking the defendant into custody after conviction and sentence in no way releases the convict from the necessity of

suffering the full penalty imposed, by the sentence. See annotations, 72 A.L.R. 1271.

In the case at bar, however, appellant was taken into the custody of the sheriff for the purpose of serving her sentence. She was in the custody, and subject to the control, of the sheriff, at the time she was placed by the sheriff in the hospital. From the moment appellant was placed in the custody of the sheriff, and for the full period of her sentence, during which time she was in the hospital, where she had been committed by the sheriff because of her illness, she was lawfully restricted of her liberty.

The judgment should be reversed, and the cause remanded with direction to the trial court to discharge appellant from further custody.

SIMPSON and HILL, JJ., concur with MILLARD, J.

___

January 6, 1949. Petition for rehearing denied.