[Nos. 45939, 45945.   En Banc.   October 11, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. GARY
HULTMAN, *Respondent.*

*In the Matter of the Personal Restraint of*
WAYNE W. GERRY, *Petitioner.*

*Curtis M. Janhunen, Prosecuting Attorney for Grays Harbor County,* and *Michael G. Spencer, Deputy,* for State as appellant.

*Lawrence W. Moore,* for petitioner Gerry.

*Don Herron, Prosecuting Attorney for Pierce County,* and *Joseph D. Mladinov, Senior Deputy,* for State as respondent.

*Gregory O. Debay,* for respondent Hultman.

HICKS, J.—At issue in these cases consolidated for appeal, is the authority of a trial court to revoke a suspended sentence and term of probation. In *State v. Hultman,* 21 Wn. App. 878, 587 P.2d 599 (1978), a divided Court of Appeals, Division Two, found *State v. Mortrud,* 89 Wn.2d 720, 575 P.2d 227 (1978), to be controlling and reversed the trial court's order revoking a 1–year suspended sentence. The case is before this court pursuant to RAP 13.2. In re Gerry, which also involves a revocation of a suspended sentence, was certified to this court by the same division of the Court of Appeals. Both cases present similar issues regarding the authority of a trial court to revoke an order suspending execution of sentence; however, factual differences require individual discussion.

## State v. Hultman

Defendant Hultman, after pleading not guilty, was tried to the court and found guilty of a crime of injury to property, a gross misdemeanor. He was sentenced January 23, 1976, to 1 year in the Grays Harbor County jail, execution suspended. The conditions of the order of suspension of execution of sentence and the attendant probation included: (1) payment of a fine and court costs within 1 year; (2) restitution within a like period; (3) remaining "on his good behavior"; (4) payment of child support previously ordered in a dissolution decree; and (5) serving 90 days in the county jail.

January 7, 1977, within 1 year of the date of suspension of Hultman's sentence, the Grays Harbor County prosecutor filed a petition for revocation of the order of suspension of execution of sentence. The petition alleged Hultman had failed to pay the fine imposed, restitution, and child support. Pursuant to a bench warrant, he was arrested on January 8, although apparently not continued in custody. January 14, the trial court entered an order setting an omnibus hearing for January 21, 1977, 1 day before expiration of his probationary term. Acting pro se, Hultman moved for discovery and for a continuance to February 22, in order "to obtain documents necessary to be presented at his hearing." January 21, the date of the omnibus hearing, the trial court granted Hultman's motion for discovery, apparently ignored his request for a continuance, and on the prosecutor's motion set the revocation hearing for January 28, 1977, 6 days beyond the 1–year probationary period.

January 21, 1 day before the expiration of his year period of probation, Hultman was arrested by Aberdeen police on a charge involving the slashing of a tire on a police patrol car, an incident which had allegedly occurred early that morning. January 28, the date previously set for the revocation hearing, the court struck the hearing pursuant to a request from the deputy prosecutor. The court did not enter an order in writing, but the clerk's minute entry in

the docket for that date reflects this action. Hultman was present in court, apparently acting pro se.

February 9, 1977, the prosecutor filed under the same case number an amended petition to revoke the order of suspension of sentence. It alleged: (1) willful failure to pay child support; and (2) malicious damage of a police vehicle.[1] Hultman obtained counsel. Following a hearing on the amended petition on April 12, 1977, the court entered an order revoking its order suspending sentence.

## In re Gerry

November 17, 1972, in Pierce County Superior Court, defendant Gerry pleaded guilty to unlawful possession of a controlled substance (amphetamine) and was sentenced to 5 years in prison, execution suspended. The period of suspended execution of sentence would end on November 16, 1977. Among other conditions of probation, Gerry was required to forego the use, sale or possession of controlled substances.

April 7, 1977, Gerry was arrested in Cowlitz County and charged with possession of a controlled substance (marijuana). He was subsequently tried before a jury, found guilty, and sentenced to 5 years in prison. This conviction has been affirmed on appeal. *State v. Gerry*, 23 Wn. App. 166, 595 P.2d 49 (1979).

June 14, 1977, following his April arrest, a Longview (Cowlitz County) probation officer filed a probation violation report on Gerry which was transferred to Pierce County. July 22, probable cause was found to schedule a revocation hearing in Pierce County regarding the November 17, 1972, order suspending execution of sentence. August 16 was set as the hearing date. On that date, Gerry appeared with counsel before the Pierce County Superior Court and moved for continuance of the revocation hearing until after completion of the Cowlitz County trial. The court granted a continuance until November 4,

---

[1] At the revocation hearing, the allegations of nonpayment of the fine and failure to make restitution were struck at the request of the prosecutor.

1977. Illness of the assigned trial judge required a further continuance to January 23, 1978. This latter continuance moved the date of the revocation hearing beyond the termination of the 5–year suspension period of the 1972 sentence.

When the matter was heard, the Pierce County Superior Court revoked the 1972 order of suspension of execution of sentence. Gerry was sentenced to 5 years in prison, to run concurrently with the Cowlitz County sentence, with credit for those days spent in the Pierce County jail. He is presently confined in the penitentiary.

Gerry's appeal from the Pierce County revocation and sentence has been treated as a personal restraint petition. The Court of Appeals certified the matter to this court where it was consolidated with *Hultman.*

A trial court has discretion to suspend the execution of sentence for any period of time not to exceed the maximum term for which sentence may be imposed for the crime concerned. RCW 9.95.210. RCW 9.95.230 grants the court authority to revoke its order of suspension. It states in part:

> The court shall have authority at *any time during the course of probation* to (1) revoke, modify, or change its order of suspension of . . . execution of sentence; . . .

(Italics ours.)

In *State v. Mortrud, supra,* the petition to revoke was not filed within the probationary period and the revocation hearing was held more than 2 years after the 1–year period of suspended execution of sentence had expired. We evinced our concern with discouraging such "administrative inertia" in handling matters involving probationers. We held at page 724:

> When the sentence has been imposed but under the terms of RCW 9.95.210 its execution is deferred, we hold RCW 9.95.230 operates to terminate the jurisdiction of the court over the defendant upon the expiration of the probationary period, and the court shall have no authority to revoke, modify, or change its order of deferral of execution of the sentence.

■■ The issue becomes: Must the revocation hearing be completed and the court's order of revocation be entered within the period of suspension or "probation" as it is phrased in the above quoted statute? We hold that it need not if the matter is diligently pursued. If the petition for revocation is filed within the suspension period and a hearing thereon is thereafter held within a reasonable time under the circumstances, the court does not lose its authority to revoke solely because the hearing date is beyond the termination of the probationary period. In re Gerry involves the issue of continuances of the hearing date beyond the probation period. *Hultman* involves a determination of whether the petition for revocation was *timely* filed within the probationary period.

Gerry was sentenced on November 17, 1972, the suspension of execution to run for 5 years from that time with certain conditions attached. The petition for violation was filed in June 1977; probable cause for revocation was found in July; and the revocation hearing was originally set for August. All these events occurred within the 5–year probation period. Gerry requested a continuance from the August date and a continuance was granted until November 4, 1977, still within the probationary period. Thereafter, a further continuance became necessary because of the serious illness of the trial court judge, and the matter was finally heard in the latter part of January 1978.

The record in Gerry indicates prompt continuous processing of the case and no evidence of "administrative inertia." As noted above, the revocation hearing in *Mortrud* occurred more than 2 years after the probationary period expired; while the Gerry hearing occurred within 2 months of the expiration.

Further, *Mortrud* did not involve the issue of continuances of the hearing date beyond the probationary period. Because of the Cowlitz County trial, a 2 1/2–month continuance was granted *at Gerry's request*. A further 2–month continuance was necessitated by the illness of the assigned

judge. As a result of this second continuance, the hearing was delayed beyond the probationary period.

By statute, a court may revoke the order of suspension "any time during the course of probation." RCW 9.95.230. We hold that the trial court retains authority to hear revocation proceedings beyond the probationary period when the delayed hearing date results from reasonable continuances granted at the defendant's request or from unforeseen excusable circumstances. This presupposes diligent processing under the circumstances with no *unnecessary* delay beyond the probationary period.

Gerry raises a further objection to the trial court's revocation of the order suspending sentence and its reimposition of the original 5–year sentence. He questions the power of the trial court, upon revocation of probation, to order execution of a suspended sentence which would extend beyond the original sentencing period. He urges that his 5–year sentence should be held to begin at the date of imposition of the original sentence in 1972. Thus, revocation of the order of suspension would result only in changing the semicustody or limited supervision of the probation officer to the more structured controlled supervision of the institution. Under this contention, the date of termination of either type of supervision would be the same—5 years from the date of original sentencing in 1972.

At least one state does recognize such a scheme of revocation sentencing, allowing credit for time on probation pursuant to statutory authority. *See State v. Reinhart,* 79 N.M. 36, 439 P.2d 554 (1968). Our statute, RCW 9.95.220, provides that "[i]n the event the judgment has been pronounced by the court and the execution thereof suspended, the court may revoke such suspension, whereupon the *judgment shall be in full force and effect . . .*" (Italics ours.) To allow credit for probationary time represents a change in policy of criminal sentencing from that of reinstating the original sentence upon revocation of an order of suspension. *See State v. Monday,* 12 Wn. App. 429, 531

P.2d 811 (1975); *State v. Wills,* 68 Wn.2d 903, 416 P.2d 124 (1966). A majority of this court believes any change in this policy should be made by the legislature.[2]

*Hultman* presents a closer question as to both timing and administrative inertia. While the original petition for revocation was filed 2 weeks prior to the end of the probation period, the original revocation hearing was scheduled for January 28, 1977, almost a week beyond the probationary period. The matter was not heard on January 28, but rather was stricken at the request of the prosecutor. Thereafter, on February 9, the petition for revocation was amended by adding the tire slashing allegation. The court's order of revocation followed a hearing that was ultimately held April 12, 1977, almost 3 months after the probationary period expired. Contrary to In re Gerry, the record does not indicate the reason for delay beyond February.

---

[2] When a convicted person appeals from his conviction and is at liberty on bond pending the determination of the appeal by the supreme court or the court of appeals, credit on his sentence will begin from the date such convicted person is returned to custody. The date of return to custody shall be certified to the department of institutions, the Washington state board of prison terms and paroles, and the prosecuting attorney of the county in which such convicted person was convicted and sentenced, by the sheriff of such county. If such convicted person does not appeal from his conviction, but is at liberty for a period of time subsequent to the signing of the judgment and sentence, or becomes a fugitive, credit on his sentence will begin from the date such convicted person is returned to custody. The date of return to custody shall be certified as provided in this section. *In all other cases, credit on a sentence will begin from the date the judgment and sentence is signed by the court.* (Italics ours.) RCW 9.95.060.

This statute, cited in the dissent, has been amended on several occasions, but the final sentence, which we have italicized, has remained unchanged since first enacted by the Laws of 1935, ch. 114, § 2. We believe the sentence refers only to those instances where the judgment and sentence has been entered and for one reason or another the convicted person remains in local custody for a period of time prior to delivery to the department of institutions.

We see, from the cases, where statements are made to the effect that a term commences to run from the date of the sentence, that such statements have always been made incidental to situations where the prisoner has been sentenced to the state penitentiary and has remained in the county jail for some time, awaiting transportation to the penitentiary.

*In re Wright,* 31 Wn.2d 905, 917, 200 P.2d 478 (1948).

*Hultman* raised three issues on appeal: (1) the trial court had no jurisdiction to hear the amended petition for revocation; (2) the probation was void and not subject to revocation; and (3) there was insufficient evidence to support the revocation. By a divided court, the Court of Appeals agreed with Hultman's contention that the trial court had no authority to revoke the order suspending execution of sentence because (1) its jurisdiction expired at the end of the maximum term pronounced (1 year), *i.e.,* January 22, 1977; and (2) its jurisdiction expired at the end of the probationary period, in this case the same date. The majority found this result to be mandated by *State v. Mortrud,* 89 Wn.2d 720, 575 P.2d 227 (1978). It dismissed Hultman's second and third assignments of error as without merit.

In *Hultman* we must initially ascertain the effect of striking the original hearing date at the request of the prosecutor. This involves a determination of continuity, *i.e.,* whether the filing of the original petition within the probation period validates the filing of the second "amended" petition, outside the probationary period. Hultman acknowledges that the first petition was timely filed.

The record is ambiguous in two respects. First, there is some indication that defendant, pro se, requested a continuance after the *initial* petition to revoke was filed. The defendant's request was not granted, however, and the court ordered the prosecutor to supply defendant with requested documents. Second, the record indicates that on the original hearing date (January 28), the prosecutor requested the hearing be stricken. Twelve days later (February 9), the prosecutor filed an amended petition containing an additional allegation of a violation within the probationary period.

We held above that filing a revocation petition within the probation period preserves the court's authority to hold a revocation hearing a reasonable time beyond the expiration of the term. We find no compelling reason to deny the prosecutor the opportunity to amend the petition to allege a violation occurring so late in the period of probation that

amendment could not reasonably be expected within the term. We emphasize that the test mandates no unnecessary delay from the filing of the original revocation petition to the date of the revocation hearing. Without a more detailed explanation in the record, the instant factual situation represents the maximum delay of a revocation hearing beyond the termination date of the probationary period.

■ Hultman raises additional assignments of error. He claims his probation was void and not subject to revocation because the trial court assigned no official to whom he was to report when it entered its order suspending sentence and establishing conditions of parole. Supervision during the probationary period is contemplated under RCW 9.95.210. No one monitored Hultman's performance of the prescribed conditions of probation, a circumstance not conducive to successful completion of probation. As noted by the Court of Appeals, however, under *State ex rel. Pence v. Koch,* 173 Wash. 420, 23 P.2d 884 (1933), even though suspension of sentence may be void for failure to assign a probation officer, the sentence itself is valid and the court may exercise jurisdiction to revoke suspension and reimpose the sentence.

■ Hultman also asserts there was insufficient evidence to find a violation of the conditions of parole. It is questionable whether this sufficiency of the evidence challenge was adequately preserved below. Assuming that it was, and even after disregarding the tire slashing charge as devoid of supporting evidence, as we do, we agree with the Court of Appeals that there was sufficient evidence to support the order of revocation. It is to be remembered that the standard of proof at probation revocation hearings reaches no higher than "that the evidence and facts be such as to reasonably satisfy the court that the probationer has breached a condition under which he was granted probation." *State v. Kuhn,* 81 Wn.2d 648, 650, 503 P.2d 1061 (1972).

*State v. Hultman,* 21 Wn. App. 878, 587 P.2d 599 (1978) is reversed and the judgment of the trial court is reinstated

with the proviso that Hultman be given credit for time in jail.[3]

The petition in In re Gerry is denied.

ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, and WILLIAMS, JJ., concur.

DOLLIVER, J. (concurring in part; dissenting in part)—I dissent from that portion of the majority opinion which affirms the trial court's reimposition of the original sentence for defendant Gerry. I would allow credit for probationary time served.

The majority claims that to allow credit for time on probation represents a policy of criminal sentencing which should be made by the legislature. I agree. The legislature has already declared such a policy in RCW 9.95.060. That statute provides that, with certain exceptions not applicable here, "credit on a sentence will begin from the date the judgment and sentence is signed by the court."

In Gerry's case, judgment and sentence was signed in November 1972. Under the statute, credit on the sentence began to run at that time. Thus, Gerry's sentence expired in 1977, and the trial court erred when it imposed an additional 5 years of confinement. While I would allow the trial court to impose the *balance* of the remaining sentence after suspension has been revoked, the statute does not allow the court to ignore the 4–plus years in which Gerry reported to a probation officer and was under quasi–custodial supervision.

The majority has constructed an interpretation of RCW 9.95.060 which reaches a contrary result. In my judgment,

---

[3]While we are cognizant that both State v. Monday, supra, and State v. Wills, supra, refuse to credit probationary incarceration time on the underlying sentence when a suspended sentence is revoked, we believe the rationale of Reanier v. Smith, 83 Wn.2d 342, 517 P.2d 949 (1974), as applied to pretrial detention, is in large measure applicable in this case and that Hultman should receive credit for his probationary jail time on his underlying sentence.

such an interpretation does not follow from the plain language of the statute. But even if the provision is ambiguous, basic principles of justice and fair play require us to interpret it so as to allow a probationer to receive credit on his sentence for the time in which he complied with the conditions of his probation. As Judge Ringold observed regarding the quasi–custodial nature of probation:

> The public tends to equate probation with leniency. Yet the constraints, obligations, and requirements imposed upon an offender's conduct as conditions of probation may often be more onerous than serving a term in a state institution. The decisions which the offender must make to cope with life in the community can be more painful and difficult than submitting to a regimented prison existence.

Ringold, *A Judge's Personal Perspective on Criminal Sentencing,* 51 Wash. L. Rev. 631, 632 (1976). In this case, Gerry had to comply with the conditions of his probation (including banishment from the community in which he was residing), the parole/probation statute, and regulations promulgated by the Department of Social and Health Services for conduct of probationers. RCW 9.95.210. He fulfilled all those requirements until the last year of his 5–year sentence for possession of a controlled substance. To impose an additional 5–year restriction on his liberty violates fundamental principles of equity.

I would grant Gerry's personal restraint petition to allow credit for time served on probation while under a suspended sentence.

UTTER, C.J., and HOROWITZ, J., concur with DOLLIVER, J.

Reconsideration denied November 21, 1979.