[No. 19410.  Department Two.  July 28, 1925.]

THE STATE OF WASHINGTON, *on the Relation of Ray
Zbinden, Plaintiff,* v. THE SUPERIOR COURT FOR
KING COUNTY, *Edward C. Mills, Judge,
Respondent.*[1]

CRIMINAL LAW (370)—SUSPENSION OF SENTENCE—PREVIOUS CONVICTION OF CRIME—STATUTES.  The court having no inherent power to suspend sentences, a sentence upon plea of guilty can not be suspended on a second conviction, under Rem. Comp. Stat., § 2280, authorizing suspension of sentence only in case the accused was "never before convicted."

Application filed in the supreme court June 26, 1925, for a writ of prohibition to prohibit the superior court for King county, Mills, J., from withholding a suspended sentence, upon a plea of guilty to a subsequent charge of grand larceny.  Denied.

*Hermon S. Frye,* for relator.

*Ewing D. Colvin* and *Ralph Hammer,* for respondent.

TOLMAN, C. J.—Relator was, on March 21, 1925, by information, charged with the crime of grand larceny, in that by false representations he did, on February 15, 1925, obtain the sum of $800, the money and property of Boone & Company, a copartnership.  To this charge he entered a plea of guilty and made a full confession to a series of acts or offenses, beginning some two years before, through which he had first obtained from different brokers a sum approximating $10,000, that all of the subsequent acts, including the one charged in the information, were committed for the purpose of obtaining money to pay back the moneys previously wrongfully obtained, and that the proceeds

[1] Reported in 238 Pac. 9; 240 Pac. 565.

of the later acts were all so used. A full investigation of relator's conduct was made and all of his criminal acts were disclosed to the court before whom the charge was pending and considered in fixing the sentence. Thereafter the relator was sentenced to imprisonment in the state reformatory for a period of not less than one year and not more than ten years and the sentence was suspended during good behavior.

Immediately following the entry and suspension of sentence, as above related, a new and independent action was commenced against the relator by the filing of an information charging him with grand larceny committed by like means on January 26, 1925, whereby he obtained the sum of $700, likewise the money and property of Boone & Company. To this information he filed a plea in abatement, setting up in detail all that occurred in the course of the prosecution of the previous charge and pleading the prior conviction as a bar. Whether this plea was withdrawn or overruled does not clearly appear from the record brought here, but it does appear that thereafter a plea of guilty was entered, and when he was brought before the court for sentence a motion was interposed asking that any sentence imposed be suspended. Thereupon the trial court, among other things, said:

"From the tenor of my remarks that I have already made it must have been apparent to every one who heard them what I purposed doing; but, in case it was not apparent, I will say that it was my purpose to have suspended this sentence because I believe it is the right thing to do. However, this statute which is now at this time called to my attention seems to prohibit the court from doing that. Consequently I am going to impose sentence and refuse to suspend it upon this ground, not that I think there ought to be imposed a sentence of imprisonment, but because I feel that the statute leaves me no option in it. I think that leaves

it open, notwithstanding this plea of guilty, for the matter to be taken before the supreme court so that it may construe the statute and decide what I have a right to do under it in a case like the one before me. I am refusing to suspend the sentence because, and only because, I feel that I cannot suspend it. I feel that it ought to be suspended under the peculiar circumstances of the case. I hope this is in such a condition that the matter can be reviewed by the supreme court. I will say as to length of sentence to be imposed, that it would be somewhat different than if I was not going to suspend it.''

By agreement between the court and counsel, the actual imposition of the sentence was withheld to permit of an application to this court for a writ of prohibition, this proceeding was instituted, and by it the one question of the right or power of the trial court to suspend sentence is here presented.

The statute in question reads as follows:

''Whenever any person never before convicted of a felony or gross misdemeanor shall be convicted of any crime except murder, burglary in the first degree, arson in the first degree, robbery, carnal knowledge of a female child under the age of ten years, or rape, the court may in its discretion, at the time of imposing sentence upon such person, direct that such sentence be stayed and suspended until otherwise ordered by such court, and that the sentenced person be placed under the charge of a parole or peace officer during the term of such suspension, upon such terms as the court may determine. In no case shall a sentence be suspended under the provisions of this section unless the prisoner if sentenced to confinement in a penal institution be placed under the charge of a parole officer, who is a duly appointed and acting officer of the institution to which the person is sentenced.'' Rem. Comp. Stat., § 2280.

It must be observed and constantly borne in mind, in order to understand what follows, that the relator

was here previously convicted of an offense subsequently committed; in other words, the first conviction was of an offense committed on February 15, 1925, and the sentence imposed for that offense was suspended during good behavior. He was thereafter subsequently convicted of an offense previously committed on January 26, 1925, and the question to be determined is whether or not the statute bars the right to suspend the sentence on this conviction by reason of the previous conviction, notwithstanding such previous conviction was of an offense subsequently committed.

Relator appears to rely upon the well-recognized rule the gist of which is well stated in Underhill's Criminal Evidence (3d ed.), § 772:

"Many of the statutes regulating the punishment of habitual criminals expressly declare that it must appear in evidence that the subsequent crime was committed after the date of the prior conviction of the accused. This rule requiring it to be proved that the conviction of the earlier crime antedates the commission of the latter offense for which the accused is now on trial would doubtless apply even where the statute is silent on this point, as otherwise the offender would have had no opportunity to reform because of the salutary discipline of the punishment which he has received as a consequence of the first conviction. The infliction of the increased punishment is a consequence of the failure to reform on the part of the accused after his earlier punishment. Hence, if the latter crime has been committed prior to the conviction, it is no proof whatever that the sentence and punishment under such conviction had failed in their reformatory effect upon the accused."

Unquestionably that is a proper rule to be applied in all cases where, by reason of repeated offenses, the punishment is increased; but that is not the question here presented. The statute we are called upon to construe does not call for increase of punishment in

any case, or at all. On the contrary, in those cases to
which it applies, it provides for special leniency. The
legislature may very well have considered that a per-
son who had committed but a single crime of a lesser
degree presented material more plastic and was more
susceptible to reformatory processes than would be one
who had been guilty of a series of such crimes; and
therefore presumably it meant just what the language
it employed expresses. Relator contends that the leg-
islature meant in effect to say:

"Power is granted the court in imposing sentences
on any person to suspend the same until its further
order. But if thereafter such person commits a felony
and is again convicted the court shall not have power
to suspend sentence;"

but gives no reason why the language actually used
should be construed as he contends, save only author-
ities supporting the rule which we have already quoted.
Were the language employed ambiguous, obscure or in
conflict with other parts of the same act, so that we
might enter upon the question of interpretation, the
reasons given by relator as to why the rule should be
as he contends might be considered. But the legisla-
tive language is plain and wholly unambiguous; there
is nothing conflicting in the act, and the legislative
language is therefore not susceptible of interpretation
or construction under any rule of statutory construc-
tion.

"One who contends that a section of an act must
not be read literally must be able to show one of two
things: either that there is some other section which
cuts down or expands its meaning, or else that the
section itself is repugnant to the general purview. The
question for the courts is, what did the legislature
really intend to direct; and this intention must be
sought in the whole of the act, taken together, and
other acts *in pari materia*. If the language be plain,

unambiguous and uncontrollable by other parts of the act, or other acts or laws upon the same subject, the courts cannot give it a different meaning to subserve public policy or to maintain its constitutionality." Lewis' Sutherland, Statutory Construction (2d ed.), § 367, page 705.

Since we have already held in *State ex rel. Lundin v. Superior Court*, 102 Wash. 600, 174 Pac. 473, that the courts have no inherent power to suspend sentence, and since, under the plain terms of the statute, relator is not within the class to which leniency is to be extended, the trial court was right and the writ must be and is denied.

FULLERTON, HOLCOMB, MITCHELL, and BRIDGES, JJ., concur.

### ON REHEARING.

[*En Banc*. November 17, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the opinion heretofore filed herein. Therefore the writ must be and is denied.