[No. 12146-4-I. Division One. July 12, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. SCOTT ERIC HALL, *Defendant,* ERIC MARTIN JOHNSON, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt* and *Deborah J. Phillips, Deputies,* for appellant.

*Nelvin Bettis,* for respondent.

SCHOLFIELD, J.—The State of Washington seeks review of the sentence imposed by the trial judge upon the defendant, Eric Martin Johnson, following Johnson's conviction for second degree robbery. The trial judge, at 9 a.m. on August 3, 1982, placed Johnson on probation for 3 hours, requiring that he spend those 3 hours in his attorney's office, and directed counsel to present an order of dismissal at noon that same day. The order of dismissal pursuant to RCW 9.95.240 was signed by the court and filed in the afternoon of August 3, 1982. We reverse and remand to the Superior Court for resentencing.

Johnson was tried July 23 through 28 with another defendant, Scott Hall. Hall's case was tried to a jury. Johnson waived a jury trial and submitted his case for decision

by the trial judge.

From the evidence before the court, the trier of fact could find beyond a reasonable doubt that Eric Johnson, Scott Hall, Craig Crnich, and Richard Strickland and two other people who did not participate in the actual robbery started planning the robbery about a week before it occurred. A .38 caliber revolver was borrowed and was used in the robbery. Johnson, Hall, Crnich and Strickland all participated in the robbery.

In the early morning hours of December 22, 1981, a service station employee was robbed at gunpoint of $2,500 he was preparing to deposit in the night deposit facility of a bank. The robber wore a ski mask over his face. He pointed the gun at the victim, took the money and instructed the victim to lie down on the ground or he would "blow [his] head off." The gun used in the robbery was loaded and operable. During the robbery, Johnson and Hall were in Johnson's car parked in a position where they could observe and give warning of the approach of law enforcement officers. They served the function of "lookouts." If officers appeared, the plan was for Johnson to distract them by driving his car in an erratic manner. The keyhole for the night deposit box had been jammed with a pencil lead for the purpose of delaying the service station employee in completing the deposit. After the robbery, the four participants drove to Hall's house, where the proceeds were distributed by setting aside some of it for a drug purchase and dividing the rest. Johnson received $300 as his share.

After the jury reached an apparent deadlock on a vote of 11 to 1 for conviction, Hall pleaded guilty to second degree robbery with allegations of use of a deadly weapon and a firearm deleted. After his conviction by the trial judge on July 28, Johnson was confined in the King County Jail pending sentencing.

The State makes several fundamental arguments. Its first contention is that the trial court acted without authority in entering an order deferring imposition of sentence without requiring the defendant to report to the secretary of cor-

rections for probation supervision as required by RCW 9.95.210.[1] Its second contention is that the trial court acted without authority in dismissing the information against the defendant when the dismissal was not preceded by a valid probationary period as required by RCW 9.95.240.[2] We agree with both contentions.

 A trial court lacks inherent authority to suspend a sentence. *State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980); *State v. Gibson,* 16 Wn. App. 119, 127–28, 553 P.2d 131 (1976). The power to suspend a sentence or defer imposition or execution thereof must be granted by the Legislature. *State v. Bird, supra; State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 69, 416 P.2d 670 (1966). The terms of the statutes granting courts power to suspend sentences and defer imposition of sentences are mandatory and when the statutory provisions are not followed, the action of the court is void. *State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 259 P.2d 404 (1953). More specifically, it has been held that failure to place a defendant whose sentence was suspended "'under the charge of a parole or peace officer" as provided by statute rendered the portion of the judgment suspending sentence void. *State ex rel. Pence v. Koch,* 173 Wash. 420, 421, 23 P.2d 884 (1933).

RCW 9.95.210 provides, *inter alia,* that "[t]he court *shall*

---

[1]RCW 9.95.210 reads in part: "The court shall order the probationer to report to the secretary of corrections or such officer as the secretary may designate and as a condition of said probation to follow implicitly the instructions of the secretary."

[2]RCW 9.95.240 provides in pertinent part:

"Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may at any time prior to the expiration of the maximum period of punishment for the offense for which he has been convicted be permitted in the discretion of the court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the court may in its discretion set aside the verdict of guilty; and in either case, the court may thereupon dismiss the information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted."

order the probationer to report to the secretary of corrections" or his designate. (Italics ours.) As a general rule, the word "shall" possesses a mandatory or imperative character. *Ballasiotes v. Gardner*, 97 Wn.2d 191, 642 P.2d 397 (1982); *Spokane Cy. ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 97 P.2d 628 (1940). Consideration of all the terms and provisions of the statutes applicable to suspending and deferring sentences, the nature of the acts in relation to the subject of the legislation, the general object to be accomplished, and the consequences of various constructions as they relate to legislative intent as directed in *State v. Huntzinger*, 92 Wn.2d 128, 594 P.2d 917 (1979) demonstrates the Legislature intended to make reporting to the secretary of corrections a mandatory step in the probationary process.

In contrast to the Legislature's use of "shall" in establishing a reporting requirement, the Legislature used "may" with reference to granting or denying probation, RCW 9.95.200, suspending sentence, imprisoning the defendant in the county jail, ordering payment of fines or restitution, RCW 9.95.210, and revoking probation, RCW 9.95.220. Presumably, the Legislature intended to distinguish the reporting requirement, making it mandatory, from the other discretionary ("may") requirements. *Scannell v. Seattle*, 97 Wn.2d 701, 648 P.2d 435 (1982).

A mandatory interpretation also is most consistent with the purposes of probation. An important goal of sentencing is to provide an opportunity for rehabilitation of the defendant so that he or she can resume a productive role in the community. Probation is a means by which judges may provide defendants with this opportunity. *Roberts v. United States*, 320 U.S. 264, 272, 88 L. Ed. 41, 64 S. Ct. 113 (1943); 3 American Bar Ass'n, *Standards for Criminal Justice*, ch. 18 (2d ed. 1980); Ringold, *A Judge's Personal Perspective on Criminal Sentencing*, 51 Wash. L. Rev. 631, 638–39 (1976); 1 C. Torcia, *Wharton on Criminal Law* § 4 (14th ed. 1978).

> Once guilt has been established as a fact, either by acknowledgement through plea of guilty or by trial, whether probation shall be granted rests in the sound discretion of the trial court. It comes as an act of judicial grace or lenience motivated by many judicial hopes, among which are that the offender will mend his ways, make restitution and avoid not only repetition of his offense but the appearance thereof.

*State ex rel. Woodhouse v. Dore, supra* at 69–70.

RCW 9.95.210 reflects clearly the legislative intent that the granting of probation would include the imposition of such conditions as in the court's discretion will contribute to teaching personal discipline and the recognition of personal responsibility that are universally recognized as being necessary to the rehabilitation of the offender. As part of that scheme, the statute directs that the probationer report to the secretary of corrections and follow implicitly his instructions.

As succinctly stated in *State v. Hultman,* 92 Wn.2d 736, 745, 600 P.2d 1291 (1979):

> Supervision during the probationary period is contemplated under RCW 9.95.210. No one monitored Hultman's performance of the prescribed conditions of probation, a circumstance not conducive to successful completion of probation.

Because the trial judge failed to order Johnson to report to the secretary of corrections or his designate, the order granting Johnson probation is void. *State ex rel. Schock v. Barnett, supra.*

We also conclude that the purpose and evident legislative intent of RCW 9.95.240 was not followed by the trial judge when he signed an order on the same day that sentence was imposed setting aside the finding of guilty, dismissing the charge, and releasing Johnson from all penalties and disabilities resulting from the crime of which he had been convicted.

A review of the provisions of RCW 9.95.230 and .240 makes it clear that those statutes contemplate, first, the imposition of conditions of probation which have some log-

ical connection with the ultimate objective of rehabilitation and, subsequently, satisfactory performance of those conditions by the probationer. Where the period of probation is so short that the objective of the statutory scheme is impossible of attainment, the resulting dismissal violates the statute because there has been no probation which would qualify the probationer for the benefits of the statute. It follows that the dismissal entered August 3, 1982, must be reversed and the cause reinstated. Accordingly, we reinstate the charge, and remand to the trial court for resentencing. We are mindful of the double jeopardy implications in this course, but do not find the clause controlling.

■ A criminal defendant is charged with knowledge of the statutes applicable to his sentencing, and can have no legitimate expectation, protected by the double jeopardy clause, that his sentence will not be increased on a statutorily provided appeal, *United States v. DiFrancesco*, 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426 (1980), or that he can benefit from the terms of a sentence which is contrary to statute. *State v. Loux*, 69 Wn.2d 855, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967). The only limitation imposed by the double jeopardy prohibition in such circumstances is that punishment already imposed must be fully credited when an appropriate sentence is entered for the offense. *See North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969).

SWANSON, J., concurs.

RINGOLD, J. (concurring in the result)—I concur in the majority's result but disagree with my colleagues' conclusion that the probation statutes, RCW 9.95.210 and RCW 9.95.240, constrain the powers of the superior courts.[3]

---

[3]It is undisputed that the superior court judge here acted within his authority to impose a probationary sentence. Compliance with the terms of RCW 9.95.210 and RCW 9.95.240, required by the majority here, imposes a meaningless technical procedure. The condition imposed by Judge Bates did not necessitate the involvement of the Department of Corrections any more than would a probation-

Appellate courts have, as the majority correctly notes, generally held that trial courts lack inherent authority to suspend a sentence or defer imposition or execution thereof absent a specific legislative grant of power to do so. *See State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980); *State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 416 P.2d 670 (1966). *But see State ex rel. Schillberg v. Cascade Dist. Court,* 94 Wn.2d 772, 621 P.2d 115 (1980) (statute vesting in the prosecuting attorney veto power over deferred prosecution of alcoholic declared unconstitutional infringement of the judicial power to control sentencing alternatives). For too long Washington courts have unquestioningly accepted the power of the Legislature to prescribe, structure, limit and eliminate the authority of the judiciary in the area of sentencing. We have yet to measure this assumed legislative right against the unusually broad judicial power[4] granted by article 4, section 6 of our constitution, which provides in part: "The superior court shall have original jurisdiction in all . . . criminal cases amounting to felony . . ."

Jurisdiction comprises much more than the power to referee a dispute, having been defined as: "[A] term of large and comprehensive import, [which] embraces every kind of judicial action. It is the authority by which courts and judicial officers take cognizance of and decide cases. [T]he legal right by which judges exercise their authority." (Citations omitted.) Black's Law Dictionary 991 (4th rev. ed. 1968). A trial court exercises its jurisdictional authority in criminal cases by imposing judgment and an appropriate sentence.

Our Supreme Court has not been unmindful of the jurisdictional conflict between the judicial and legislative powers. In 1933 the Legislature enacted the Labor Disputes

---

ary sentence conditioned upon the defendant serving 3 months in the city or county jail.

[4]Arizona appears to be the only other state whose constitution grants similarly broad jurisdiction. Ariz. Const. art 6, § 14, provides: "The superior court shall have original jurisdiction of: . . . 4. Criminal cases amounting to felony, and cases of misdemeanor not otherwise provided for by law."

Act, which provided in part, "No court of the State of Washington or any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute . . ." Labor Disputes Act, Laws of 1933, 1st Ex. Sess., ch. 7, § 1, p. 10. The Supreme Court ruled this portion of the act unconstitutional in *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P.2d 397 (1936), stating:

> The precise question before us, under the facts of the entire case, is whether the legislature can abolish or abridge the power of the superior court to issue injunctions, or regulate that power in specific classes of disputes in such a way as will, to that extent, abolish or abridge the power. We hold that it cannot, because to do so would be an encroachment upon the judicial power.

*Blanchard*, at 412. The court elaborated:

> Thus, by the constitution, and independently of any legislative enactment, the judicial power over cases in equity has been vested in the courts, and, in the absence of any constitutional provisions to the contrary, such power may not be abrogated or restricted by the legislative department. *Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department.*

(Italics mine.) *Blanchard*, at 415. *See also Fisher Bros. Corp. v. Des Moines Sewer Dist.*, 97 Wn.2d 227, 643 P.2d 436 (1982). The probation statutes here encroach upon the judicial power by attempting to limit the authority of a trial court to impose an appropriate sentence upon a felon.

To say that the trial judge's authority to impose a probationary sentence cannot be fettered by legislative enactments does not end the matter. A superior court's constitutional power to grant probation or to impose the maximum term of incarceration authorized by the Legislature must be exercised within appropriate bounds. As the court stated in *Blanchard*, at page 412: "The real question

is one of jurisdiction of the superior court, that is, jurisdiction to exercise its sound discretion upon the particular facts presented, a discretion subject to review for manifest abuse." More recently our Supreme Court examined the nature of judicial discretion:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *State ex rel. Clark v. Hogan,* 49 Wn.2d 457, 303 P.2d 290 (1956). Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Properly exercised judicial discretion is a choice, based on reason rather than intuition, from among permissible alternatives. *See generally* R. Aldisert, *The Judicial Process,* ch. 5, § 4 (1976).

To provide a reasoned choice of alternatives in this area it is necessary to consider the societal objectives and goals served by appropriate sentencing under our criminal justice system. I have previously stated what in my opinion are its purposes: namely, protection of society, deterrence and rehabilitation. Ringold, *A Judge's Personal Perspective on Criminal Sentencing,* 51 Wash. L. Rev. 631 (1976).

The American Bar Association has identified "the protection of the public and the gravity of the crime" as primary concerns in sentencing, 3 American Bar Ass'n, *Standards for Criminal Justice,* Std. 18–2.2(a) (2d ed. 1980), and has developed helpful guidelines for the exercise of judicial discretion in this area. Standard 18–3.2(b) sets out the considerations for and against granting a deferred sentence (probation):

> (i) In the case of mitigating factors:
> (A) the offender did not contemplate that his or her conduct would cause or threaten serious bodily harm

or fear, or the offender exercised caution to avoid such consequences;

(B) the offender acted under strong provocation, or other circumstances in the relationship between the offender and the victim were extenuating;

(C) the offender played a minor or passive role in the crime or participated under circumstances of coercion or duress;

(D) the offender because of youthful age or any physical or mental impairment lacked substantial capacity for judgment when the offense was committed; or

(E) other substantial grounds exist which tend to excuse or mitigate the offender's culpability, although not amounting to a defense.

(ii) In the case of aggravating factors:

(A) the offender was the leader of the criminal enterprise;

(B) a victim was particularly vulnerable;

(C) a victim was treated with particular cruelty for which the individual offender should be held responsible;

(D) the offense involved injury or threatened violence to others committed to gratify the offender's desire for pleasure or excitement; or

(E) the degree of bodily harm caused, attempted, or foreseen by the offender was substantially greater than average for the given crime.

Against the backdrop of these underlying policy aims and standards we consider the trial judge's exercise of his discretion here. Before judgment and sentence the trial court entered an order dispensing with any presentence investigation. The court indicated that the prosecutor's statement of the offense and the defense counsel's statement of defendant's background, neither of which is contained in the record, were sufficient to provide facts upon which to base an informed sentencing decision.

After this court granted review, the trial court entered and filed "Court Additions to the Record on Appeal" in which the judge stated:

Unfortunately, even a verbatim transcript only records things that are spoken. Many of the material facts before

the Court have to do with the demeanor of the defendant, other parties, witnesses and their interactions. Moreover, the Court's experience in seeing prosecutor's recommendations such as the one in this case which so obviously violated the law, and in seeing how much or how little thought goes into a prosecutor's sentencing recommendation, does not appear in a verbatim transcript.

He then enumerated five factors material to his sentencing decision: (1) the defendant had a supportive family; (2) the defendant was terrified of the proceedings; (3) the defendant's involvement in the crime was minimal; (4) the record did not reflect defendant's demeanor when he was taken from the courtroom in handcuffs; (5) at the time of sentencing the defendant had spent 12 days in jail.[5]

Regrettably the trial judge's effort to articulate his reasons on the record came too late. While in a sense all reasons constitute ex post facto rationalization, they nonetheless must be stated in open court when sentence is being imposed. An appellate court cannot consider the trial court's reflections more than 3 months after the event as to its reasons for exercising its discretion in this manner.

In summary, the proper exercise of discretion in sentencing requires the trial judge to take certain steps. First, he must base his judgment upon facts sufficient to make an

---

[5]In its supplement to the record, the trial court explained:

"There are many other factors that cannot be listed. These have to do with a judge's human experience and his judicial conscience, both of which come into play when he is asked to exercise his discretion. As I say, I cannot expressly articulate them but I know that they are material factors and that they were intended to be. If our society did not want humanity to play a part in sentencing criminals we would not ask humans to make the decision. If we did not want individuals to stand before the court to be sentenced for their individual crimes, then we would not require that it be done. We would simply do as the prosecutor's office would apparently have us do: treat people as commodities, remove all considerations of mercy or individuality, work according to a schedule and never, under any circumstances, give an apparently deserving human being a chance to mend his ways or a future to try to save.

"Until such time as society instructs the Courts that humanity and mercy are no longer qualities of justice they will continue to play a part in my exercise of discretion."

informed disposition. Second, a sentence must be fashioned to serve societal goals, *i.e.*, protection of society, deterrence and rehabilitation. Third, the judge must pronounce the judgment and sentence in open court and state on the record his reasons for the sentence imposed.

The record contains insufficient information from which to fashion an appropriate sentence. Further, the record discloses little consideration of the goals to be served by and no reasons for the sentence meted out. I cannot say from this record that the trial judge exercised his discretion for tenable reasons or on tenable grounds, *State ex rel. Carroll,* and therefore join the majority in remanding for resentencing.[6]

---

[6]In light of Johnson's concession in respondent's brief that "resentencing is not double jeopardy" I express no opinion on the double jeopardy issue.