[No. 11737–8–I.   Division One.   January 11, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT MARK, *Appellant.*

*Albert Mark,* pro se, and *Jonathan Cole* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg Montgomery, Deputy,* for respondent.

RINGOLD, J.—Albert Mark appeals from a restitution order entered after his 1977 jury conviction for grand larceny. We remand for the purpose of reducing the amount of required restitution from $230,000 to $93,000.

Mark, a West Seattle pharmacist, was convicted of grand larceny for submitting reimbursement claims to the Department of Social and Health Services (DSHS) for medicines neither dispensed nor prescribed. He received a deferred sentence conditioned in part on payment of restitution to DSHS in an amount to be determined in a post–trial hearing. After various appeals, a restitution hearing was held in 1982 and Mark was ordered to pay $230,000 in restitution.

At the original jury trial the State introduced evidence of an audit which Mark challenged as insufficient and inaccurate. A second audit plan was agreed on by the trial court

and counsel. Mark refused to cooperate in this audit, denying access to the records on various occasions. The trial court entered an order, which Mark appealed, directing Mark to cooperate with the audit. This court affirmed in *State v. Mark*, 23 Wn. App. 392, 597 P.2d 406 (1979).

Two DSHS auditors testified at the restitution hearing that the second audit utilized "approved random sampling techniques," with a 90 to 95 percent accuracy level. The audit involved checking randomly selected prescriptions and projecting the results to all of the prescriptions. Prescriptions are recorded on sequentially numbered forms, copies of which must by law be kept in the pharmacy. DSHS checked 3 percent of the prescriptions for which Mark requested reimbursement between January 1, 1974 and December 31, 1976. The auditors went to Mark's pharmacy to "pull" his copy of the requests and to obtain the prescribing doctors' names in order to check the authenticity of the requests. Bundles of prescriptions were missing, although they were present during the first audit. Eventually additional bundles of prescriptions were produced, but 63 percent of the prescriptions in the random sample were not located or verified in any way.

Mark was paid a total of $379,988.92 during the audit period. DSHS took the percent of unjustified claims based on the random sample, applied that percentage to the entire amount of reimbursement, and estimated that the amount of unjustified reimbursement for the entire audit period was $202,770.67. This result is based on the assumption that the billings for which information was provided were proper, but that the billings without any information were improper. Based on this evidence, the trial court ordered $230,000 in restitution.

### PROPRIETY OF RESTITUTION

Former RCW 9.95.210, as it read at the pertinent time, authorized the court to impose restitution as a condition of probation "as it deems appropriate under the circumstances . . . to make restitution to any person or persons who may

have suffered loss or damage by reason of the *commission of the crime in question."* (Italics ours.)

Mark was charged and convicted of the crime of grand larceny between June 1, 1975 and June 30, 1976. He argues that former RCW 9.95.210(2) allows probation to be conditioned on making restitution only to victims of the "crime in question," and that the "crime in question" here is larceny from June 1, 1975 to June 30, 1976. *State v. Eilts,* 94 Wn.2d 489, 617 P.2d 993 (1980). Thus, Mark argues, the court erred in ordering restitution for the 3–year period of the audit and restitution must be limited to the $93,000 the trial court attributed to the specific time period charged.

The State argues that (1) RCW 9.95.210 is a remedial statute which should be broadly construed in order to effectuate the statutory purpose of preventing crime and making reparation to the victim. *State v. Barr,* 99 Wn.2d 75, 78, 658 P.2d 1247 (1983); (2) *Eilts* is not controlling because it holds that the trial court may order restitution only to victims of the charged crime. This is not at issue here because Mark's conduct caused losses to a single "victim," DSHS, from a single criminal scheme; (3) the court properly considered the entire loss to this single victim and acted within its statutory authority in ordering complete restitution.

█ The issue presented is whether RCW 9.95.210 limits the scope of restitution to the precise offense as charged, or allows the trial court sufficient discretion to order restitution for the damages arising from the general criminal scheme for which the defendant was convicted. We agree with Mark's characterization of his conviction as being for "grand larceny for 13 months." Limiting restitution to the specific 13–month period charged may be technical, but it is required by the specific language of the statute.

In *State v. Eilts, supra,* the Supreme Court held that the trial court exceeded its statutory authority in ordering restitution for all 87 investors defrauded by the defendant. Restitution was limited to those victims of the fraud charged and proven at trial. The court construed the lan-

guage "the crime in question" as restricted to the offense on which the conviction is specifically based, rejecting the argument that the "crime in question" was fraud perpetrated by the defendant in the offer and sale of securities to the public. *Eilts,* at 493. The court reasoned that restitution must be reasonably related to the crime in order to effectuate the purpose of directing a defendant to accept responsibility for his or her acts. Because the State did not establish an overall plan or the existence of a single scheme to defraud the public, the defendant was being required to make restitution to people against whom he was not charged with wrongdoing. Such "restitution" does not achieve the goal of making the defendant realize the scope of the wrongful acts or aid in rehabilitation. *Eilts,* at 493–94.

After the *Eilts* opinion, the Legislature amended RCW 9.95.210 to read as follows, adding the underlined language to the statute:

> The court may also require the defendant to make such monetary payments, on such terms as it deems appropriate under the circumstances, as are necessary (1) to comply with any order of the court for the payment of family support, (2) to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question or when the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement . . .

In *State v. Barr, supra,* the Supreme Court acknowledged that this legislative action effectively overruled *Eilts* and indicated the legislative intent "that this statute be interpreted broadly to allow restitution." *Barr,* at 78–79. The *Barr* court affirmed a restitution order requiring the defendant to pay child support to the surviving child of the negligent homicide victim. The court distinguished *Eilts* by saying that "[t]he trial court's order of restitution . . . was

not based on their status as victims of uncharged crimes but rather as persons who suffered loss or damage because of . . . [the] death", recognizing that the "broad language" of the statute allows such an interpretation. *Barr*, at 78.

Though the court in *Barr* states that there is a broad rehabilitative purpose to the restitution requirement, restitution must conform to the statutory language. It is for the Legislature to define the authority within which the trial court's discretion will be exercised in imposing restitution on the part of a defendant. *Eilts; Barr.*

The Legislature did not, in amending the statute, require restitution to the same victim beyond "the crime in question" or for uncharged offenses. The court relied on the language of the statute to sustain the restitution order in *Barr* as allowing payment to "any person or persons who may have suffered loss or damage by reason of the commission of the crime in question." RCW 9.95.210. Restitution in *Barr* is related to the crime charged, *i.e.,* "negligent homicide in causing the death of Donald Howe." Here the only crime charged, the crime in question, is grand larceny for the 13–month period. Under the statute, Mark can be required to make restitution only for the amount of unjustified payments between June 1, 1975 and June 30, 1976.

### Sufficiency of the Evidence

Mark contends that there was insufficient evidence to require any amount of restitution, thus the trial court abused its discretion in requiring restitution. Under RCW 9.95.210, the court has discretion to determine the amount of restitution. The appellate court will find an abuse of discretion only when "discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). That discretion in this instance must be based on sufficient evidence.

This court properly approved the audit plan, based on statistical random sampling techniques, which was carried out by DSHS. Two DSHS employees testified about

the methods used and that their accuracy level is usually 90 to 95 percent. There were many missing records which prevented the auditors from tracing the prescriptions to the original doctor to determine their validity. There was evidence that these prescriptions were in existence prior to the audit, and state law requires the retention of pharmacy records for 5 years. RCW 18.64.245. The permissible inference drawn by the auditors and by the trial court was that Mark destroyed records which were false. *Cf. Pier 67, Inc. v. King Cy.,* 89 Wn.2d 379, 385, 573 P.2d 2 (1977) (failure to produce records in possession allows inference that evidence is unfavorable). Ample evidence was introduced here to support the trial court's determination that Mark was engaged in an ongoing scheme or criminal plan that defrauded DSHS of more than $200,000 over 3 years. The trial court did not abuse its discretion.

## CERTAINTY OF DAMAGES

■ Mark next alleges that the damages are too vague and uncertain. Damages, however, need not be proven with specific accuracy. *State v. Bush,* 34 Wn. App. 121, 123, 659 P.2d 1127 (1983) involved a proceeding under the juvenile justice act, which requires that restitution be specific and easily ascertainable. The court stated that "'[e]asily ascertainable' damages are those tangible damages which are proved by sufficient evidence to exist." *Bush,* at 123. Once the *fact* of damage is established the *amount* need not be shown with mathematical certainty. Evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. *Bush,* at 124.

Here, the fact of damage was established in the jury trial and affirmed on appeal to the Supreme Court. The amount of damage was adequately established by substantial credible evidence at the restitution hearing. There was no abuse of discretion.

## DUE PROCESS CLAIM

■ Mark claims that his due process right to have a civil

jury determine damages was violated by determining restitution in a criminal proceeding, and that he was deprived of property without due process. These claims are without merit. The Supreme Court has previously rejected the argument that a criminal defendant has a constitutional right to have a civil jury determine the amount of a restitution award. *State v. Barr, supra.* Restitution in criminal proceedings is not a substitute for civil liability. Mark, represented by counsel, had a separate restitution hearing with an opportunity to present testimony, cross–examine witnesses, and other trial protections. He was afforded all procedural process that was due.

Mark also claims that the trial court incorrectly allocated the burden of proof on restitution to the defendant. The trial court's language, quoted in Mark's brief, could be read this way. Mark, however, cited language taken from the court's oral decision, when the judge was discussing Mark's obstruction of the court ordered audit, and substantial evidence presented by the State showing the amount of the fraud. The court later specifically stated that the burden of proof was not on the defendant. The court's statements, taken out of context, are not alone a sufficient basis for the conclusion that the trial court incorrectly applied the law or abused its discretion. The conclusions of law do not indicate misapplication of the law.

Mark raises other issues in his pro se brief, primarily dealing with prosecutorial misconduct, adverse publicity during trial, and alleged "lies" by DSHS. These issues relate to the original trial, not to the restitution hearing. Mark has previously appealed his conviction. Issues which were raised, or could have been raised, in an earlier appeal will not be considered in a subsequent appeal on the same case. *State v. Bailey,* 35 Wn. App. 592, 668 P.2d 1285 (1983).

We accordingly remand to the trial court for the purpose of reducing the restitution order to the sum of $93,000.

SWANSON and SCHOLFIELD, JJ., concur.

ADDENDUM

RINGOLD, J.—The court's opinion here is mandated by stare decisis as developed by prior case law. I would, however, suggest as I did concurring in *Fisher Bros. Corp. v. Des Moines Sewer Dist.,* 29 Wn. App. 117, 119, 627 P.2d 589 (1981), that "[o]bscured by history and neglect, has been the significance and applicability of article 4, section 6 (amendment 65) of the state constitution, governing jurisdiction of superior courts." It has been the accepted wisdom that a trial court lacks the inherent authority to suspend or defer a sentence, or to impose probation and require payment of restitution as a condition of probation. In *State v. Eilts,* 94 Wn.2d 489, 495, 617 P.2d 993 (1980), the court reiterated this oft–stated rule in quoting *State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 931, 259 P.2d 404 (1953):

> The court has no inherent power to suspend a sentence. *State ex rel. Zbinden v. Superior Court,* 135 Wash. 458, 463, 238 Pac. 9, 240 Pac. 565 (1925), and case cited. The terms of the statute granting this power are mandatory. *State ex rel. Comer v. Hall,* 173 Wash. 188, 194, 22 P. (2d) 295 (1933), and cases cited. If the statutory provisions are not followed, the action of the court is void. *Id.* at p. 196. The same rules apply to probation. The court must act within the limits of the statutes. *State v. Farmer,* 39 Wn. (2d) 675, 678, 237 P. (2d) 734 (1951).

The court has thus held that the judicial authority with respect to sentencing emanates from the Legislature as expressed in RCW 9.95.210, and other statutes concerning the judicial sentencing power.

Article 1, section 32 of our state constitution admonishes: "A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government."

Here are a few fundamental principles worth recalling: (1) The judicial branch of government is separate and equal with the legislative and executive branches. (2) The powers of all three branches of government derive from the state

constitution. (3) The total grant of power to the Legislature is contained in Const. art. 2, § 1: "Legislative powers, where vested. The legislative authority . . . shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the State of Washington . . ." (4) Article 4, however, grants extensive powers to the judiciary. Section 6 bestows "original jurisdiction in all cases in equity . . . and in all criminal cases amounting to felony . . ." on the superior courts.

I am not convinced, without far more research into history, that the power to establish sentences and the terms and conditions of punishment is embodied in the common law authority of the Legislature. This was a power held by the kings and emperors, by judges and juries, by the biblical judges, the ecclesiastical courts, and the courts of equity. It is traditionally judicial.

As I urged in my concurring opinion in *State v. Hall*, 35 Wn. App. 302, 309, 666 P.2d 930 (1983):

> For too long Washington courts have unquestioningly accepted the power of the Legislature to prescribe, structure, limit and eliminate the authority of the judiciary in the area of sentencing. We have yet to measure this assumed legislative right against the unusually broad judicial power granted by article 4, section 6 . . .

(Footnote omitted.)

Finally we must look to the precedential base for the accepted supremacy of the Legislature in the area of sentencing. The Legislature's authority rests on quicksand. The issue was first considered by the Supreme Court in *State ex rel. Lundin v. Superior Court*, 102 Wash. 600, 602, 174 P. 473 (1918) where the court said

> But, aside from these statutory provisions which negative the view that our superior courts have the power to suspend sentence indefinitely after conviction by the verdict of a jury or by a plea of guilty, we think the law is, in the absence of statute, that courts do not have the inherent authority to suspend sentence indefinitely, nor did they ever possess any such power at common law.

No consideration was given by the court to the powers

granted to the three branches of government by our state constitution. The sole case upon which the court relied was *Ex parte United States,* 242 U.S. 27, 61 L. Ed. 129, 37 S. Ct. 72, 1917E L.R.A. 1178 (1916).

The issue there before the United States Supreme Court was the validity of an order entered by a United States District Court:

> "that the execution of the sentence be, and it is hereby suspended during the good behavior of the defendant, and for the purpose of this case this term of this court is kept open for five years."

*Ex parte United States,* 242 U.S. at 37. The United States Supreme Court, reviewing cases holding that the suspension of a sentence by a court was within and beyond the inherent judicial power, ruled that a United States District Court judge has no authority to suspend the execution of a sentence. It is inappropriate to apply *Ex parte United States* to the State of Washington. Federal district courts do not have constitutional powers; their authority and jurisdiction are determined by the powers granted by Congress. In Washington, however, the powers, authority, and jurisdiction of the Supreme Court, the appellate court and the superior courts are derived from the state constitution.

Relying on *Lundin,* the Supreme Court held in *State ex rel. Zbinden v. Superior Court,* 135 Wash. 458, 238 P. 9, 240 P. 565 (1925) that the courts have no inherent power to suspend sentences. Thus I find cases starting with *State ex rel. Lundin v. Superior Court* to the present, *State v. Eilts, supra,* and *State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980), encrusting the rule with a hoary myth by restating it and never doubting its legitimacy.

If not precluded by stare decisis I would urge the Supreme Court to measure this assumed authority of the Legislature against the powers granted to the judiciary in the constitution. *See State v. Hall,* 35 Wn. App. 302, 308–10, 666 P.2d 930 (1983) (Ringold, J., concurring).

Were this done, I would dispose of the cause here by considering the imposition of required restitution to be an

exercise of the trial court's discretion and determining whether that power was abused by the trial court, in accord with the criteria expressed in *Hall,* at 311–14 (Ringold, J., concurring).