FILED
12/12/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>BLAISE MANISHIMWE PASCLA,<br><br>Appellant. | No. 83052-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Blaise Pascla pleaded guilty to third degree assault following a physical altercation with a Bellevue (City) police officer. On appeal, Pascla challenges the trial court's order imposing $26,000.00 in restitution for claims paid on behalf of the City for the officer's medical expenses and disability benefits. We affirm.

I

On March 14, 2020, Travess Forbush was one of two City police officers working off duty as security at a construction site. Both officers were in uniform and driving unmarked patrol vehicles equipped with lights and sirens. The officers observed a black Honda Civic approach the construction zone at a high rate of speed, lose control, collide with a parked car, and speed off. Forbush activated his lights and sirens and pursued the Honda. The Honda did not stop and instead collided with a second parked car, causing the Honda's hood to flip up and obstruct the windshield. The Honda turned into a cul-de-sac, and the driver, later identified

as Blaise Pascla, exited the car. Forbush approached Pascla, who resisted Forbush's attempts to take him into custody and began punching Forbush in the face and head. It was apparent that Pascla was intoxicated or under the influence of drugs. With the assistance of a bystander, who came out of his house after hearing the commotion outside, Forbush was able to control and handcuff Pascla. Forbush suffered multiple lacerations to his face and was treated at Overlake Hospital Medical Center, where he received stitches. According to a medical record from Forbush's hospital visit, Forbush "denied other injuries."

The State charged Pascla with (1) assault in the second degree, (2) felony driving under the influence (DUI), (3) attempting to elude a pursuing police vehicle, and (4) hit and run. Pascla pleaded guilty to felony DUI and assault in the third degree under RCW 9A.36.031(1)(g) (assault on a law enforcement officer performing official duties) after the State agreed to amend the information to include only those charges. As part of the plea agreement, Pascla agreed to "pay restitution in full to the victim(s) on charged counts."

In January 2021, the trial court sentenced Pascla to a total term of 43 months' confinement consistent with the parties' agreed sentencing recommendation. The court also ordered Pascla to pay restitution, but it reserved on the restitution amount.

In June 2021, the State requested Pascla pay restitution to Gallagher Bassett (Gallagher)[1,2] in the amount of $26,895.87, consisting of $20,435.72 for claims paid on behalf of the City for Forbush's medical expenses, and $6,460.15 for disability benefits paid to Forbush. It does not appear the State's June 2021 request was filed with the court at the time but, instead, was made via a memorandum delivered to Pascla's counsel as part of ongoing negotiations regarding the restitution amount.

On July 27, 2021, Pascla filed an objection to the amount of the restitution request in advance of a July 29, 2021 restitution hearing. He argued that the documentation the State had provided with its restitution request was "insufficient . . . to establish a link between the offense to which Mr. Pascla pl[ead]ed guilty and the requested restitution amount."

On the morning of the restitution hearing, the State filed its own memorandum. In support, the State submitted documentation, described in more detail below, showing payments by Gallagher for Forbush's treatment beginning in

---

[1] Pascla describes Gallagher as "Officer Forbush's insurance provider," but the record does not identify Gallagher as such. The record suggests the City is self-insured for its workers' compensation program with Gallagher serving as its claims administrator. The City is identified as the "payer" or "insurer" in the documentation provided for several payments, and a victim loss statement submitted to the court identified Gallagher as "TPA," presumably short for "third party administrator."

[2] Pascla argues for the first time in his reply brief that Engrossed Substitute House Bill 1412, 67th Legislature, Regular Session (Wash. 2022) (HB 1412), applies to him. HB 1412 authorizes a court to relieve an offender of the requirement to pay restitution to "an insurer or state agency" if the court finds that the offender does not have the current or likely future ability to pay. See LAWS OF 2022, ch. 260, § 3(3)(b). Because HB 1412 does not take effect until January 1, 2023, see LAWS OF 2022, ch. 260, § 26, we do not consider whether it applies to Pascla.

April 2020 related to a shoulder injury, including an eventual shoulder surgery in January 2021.

The State also filed a copy of Forbush's supplemental report from the day after his altercation with Pascla and a new affidavit dated the day Pascla had filed his objection, July 27, 2021, in which Forbush testified:

> Pascla was involved in two hit and run collisions and resisted arrest when I contacted him . . . .
>
> Pascla attempted to pull away from me, struggled with me as we fell into the driver seat, struck me several times with a closed fist and when I pulled him from the vehicle resisted my verbal commands and attempts to push him to the ground. I told him to get on the ground and I grabbed his left shoulder with my left hand and his hair with my right hand and swung him to the ground. He landed on his stomach, and I fell onto his back wrapping my legs around his legs to prevent him from getting up and escaping. I was trying to grab his arms which he had under his chest. With the help of a private citizen and other officers I was able to control and handcuff Pascla.
>
> I was treated at Overlake Hospital for the lacerations and soreness to my jaw. At that time, I also noticed a soreness in my right shoulder, but the amount of pain did not require medical treatment at the time. As time passed, I noticed that the range of motion of my right arm was restricted, and certain movements caused pain.
>
> I was seen by a doctor for the shoulder pain and initially she prescribed physical therapy and an MRI.[3] I attended physical therapy as directed but I did not schedule the MRI as I thought maybe the therapy would remedy the symptoms. Certain motions and actions continued to cause pain in my right shoulder, so I consulted with an orthopedic surgeon and had the MRI completed. The surgeon and radiologist identified a SLAP[4] tear and a second tear in my labral that resulted in a cyst that would continue to grow without surgery.
>
> Prior to the physical altercation with Pascla I had no pain in my shoulder or restricted movement.

---

[3] Magnetic resonance imaging.
[4] The record does not reflect what "SLAP" stands for.

In reply, Pascla argued Forbush's new affidavit "contradict[ed] what [he] reported to medical providers close in time to the incident," when "[t]here was no description of any shoulder pain or shoulder injury." Pascla requested that the court deny restitution "regarding any shoulder injury and repair."

At the restitution hearing, the trial court found there had been "a showing by a preponderance [of the evidence] that there's a sufficient nexus between the shoulder pain and the injuries suffered that needed medical care." It explained, "The reason I believe there's a nexus is because the fact that he didn't have serious pain in the [emergency room] is of little moment because injuries frequently take their time to come to the fore," and Forbush indicated that "prior to the physical . . . altercation, he had no pain in his shoulder or restricted movement." The court acknowledged the State had requested slightly more than $26,000.00, then ruled that it would "enter an order for $26,000 even." Consistent with this ruling, the trial court entered an order directing Pascla to pay restitution in the amount of $26,000.00.

Pascla appeals.

II

Pascla argues that because the State did not satisfy its burden to prove the restitution amount, the trial court erred by ordering Pascla to pay $26,000.00 in restitution. We disagree.

Under RCW 9.94A.753(5), the trial court is directed to impose restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." Restitution "shall be based on easily

5

ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury" and "shall not exceed double the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.753(3). "[T]here must be a causal connection between a victim's losses and the defendant's offense." State v. Romish, 7 Wn. App. 2d 510, 515, 434 P.3d 546 (2019). Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss. Id.

"If a defendant challenges the restitution amount sought by the State, the State must prove causation and damages by a preponderance of the evidence." Id. The rules of evidence do not apply at a restitution hearing, State v. Pollard, 66 Wn. App. 779, 784, 834 P.2d 51 (1992), but the evidence must be reasonably reliable so that the trier of fact is not subjected to mere speculation or conjecture. State v. Fambrough, 66 Wn. App. 223, 225, 831 P.2d 789 (1992). In determining whether a causal connection exists, the court looks not to the name of the crime to which the defendant entered a plea, but to the underlying facts of the charged offense. State v. Griffith, 164 Wn.2d 960, 966, 195 P.3d 506 (2008).

We review a trial court's factual findings with regard to a causal connection for substantial evidence. Griffith, 164 Wn.2d at 965. "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted." State v. Lemus, 103 Wn. App. 94, 99, 11 P.3d 326 (2000). Once a causal connection is established, the sentencing court has "broad discretion to order restitution amounts." Romish, 7 Wn. App. 2d 515; see also State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005) ("RCW 9.94A.753 allows

the judge considerable discretion in determining restitution."). "We review a challenge to the amount of a restitution order for abuse of discretion." State v. We, 138 Wn. App. 716, 727, 158 P.3d 1238 (2007).

Here, substantial evidence supports the trial court's finding that Forbush's injuries,[5] including his shoulder injury, were causally connected to his altercation with Pascla. The record shows Forbush was involved in a physical struggle with Pascla during which Pascla resisted Forbush's attempts to detain him and punched Forbush multiple times. Forbush attested that at one point, he "swung" Pascla to the ground after Pascla tried to push him backward. Gallagher submitted documentation showing treatment for a persistent shoulder strain beginning in April 2020, which was resistant to conservative therapy over several months of ongoing care and ultimately led to surgery. The documentation reflects payments to Franciscan Medical Group and Surprise Lake Medical Clinic for outpatient treatment on April 23, 2020, related to a shoulder strain. The documentation shows payments for a shoulder X-ray in early May 2020 followed by physical therapy in May and June. The documentation shows payments for additional shoulder imaging in September 2020, an outpatient visit with Proliance Surgeons in October and December 2021, shoulder surgery on January 22, 2021, temporary

---

[5] Pascla does not dispute that if Pascla's offense and Forbush's injuries are causally connected, then so are Pascla's offense and the payments Gallagher made on the City's behalf related to those injuries. Cf. State v. Ewing, 102 Wn. App. 349, 350, 7 P.3d 835 (2000) (sentencing court may order offender to pay restitution to insurer that suffers a loss as a result of the offense); State v. Davison, 116 Wn.2d 917, 919, 921, 809 P.2d 1374 (1991) (city that paid assault victim during the time he was unable to work as a firefighter was a victim for restitution purposes).

total disability benefits for approximately three weeks after the surgery, and temporary partial disability benefits for a period thereafter. Much of the documentation identifies an injury date of March 14, 2020, the date of Pascla's assault of Forbush, indicating that Gallagher attributed the payments to the altercation. Consistent with the foregoing documentation, Forbush's July 2021 affidavit described soreness in his shoulder when he went to the emergency room on the date of Pascla's assault, treatment by a doctor followed by physical therapy and additional imaging after his pain persisted, and an eventual consultation with an orthopedic surgeon. And, Forbush attested that he had no pain in his shoulder before his altercation with Pascla.

The foregoing evidence of the nature of the underlying altercation and the onset and timing of Forbush's shoulder pain and treatment was sufficient to persuade a rational, fair-minded person that the altercation caused Forbush's shoulder injury.[6]

Pascla disagrees and relies on State v. Dedonado, 99 Wn. App. 251, 991 P.2d 1216 (2000), for the proposition that "Forbush's blank assertion alone is insufficient to demonstrate a nexus between the assault and the costs related to his shoulder injury." In Dedonado, we observed that "[a] causal connection is not established simply because a victim or insurer submits proof of expenditures for

_____

[6] The State relies, additionally, on a July 26, 2021 declaration from a Gallagher representative and the documentation attached thereto. For reasons that are not apparent from the record, the State did not file this declaration until August 13, 2021, *after* the trial court entered its restitution order. Because the declaration was not before the trial court at the restitution hearing, we disregard it and instead consider only the materials presented to the trial court at the time of the hearing.

replacing property stolen or damaged by the person convicted." 99 Wn. App. at 257. There, the State sought restitution in the amount of $10,968.60 for a new, replacement generator following burglary of an electronics shop. Id. at 253. But there was no explanation for either how the generator was damaged in the burglary or whether the replacement was an appropriate substitute for the allegedly damaged one. Id. at 256-57. In contrast, the evidence here consists of more than just a list of expenditures, and plausibly connects the physical altercation with Forbush's subsequent shoulder injury and treatment. There is evidence Forbush bodily swung Pascla to the ground in the effort to arrest him, Forbush did not have shoulder pain before the altercation, and Forbush began treatment for shoulder pain not long after the altercation. Dedonado is not analogous, and Pascla does not establish the trial court erred by finding a causal connection between his offense and Forbush's shoulder injury.

Pascla also does not establish that, once the trial court found a causal connection supported by substantial evidence, the trial court abused its discretion by ordering restitution in the even amount of $26,000.00. Relying again on Dedonado, Pascla contends that "[a] list of expenditures alone is not sufficient to prove the amount of restitution."

But Dedonado is inapposite because it analyzed only whether a causal connection existed between the offense and the claimed damages. See Dedonado, 99 Wn. App. at 257 ("The State did not meet its burden of proving the restitution amounts here . . . because the documentation it provided *did not establish a causal connection* between Dedonado's actions and the damages."

9

(emphasis added)). Where, as here, "the *fact* of damage is established[,] the *amount* need not be shown with mathematical certainty." State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984). To this end, the State submitted Gallagher's payment list showing that it paid a total of $26,895.87 on the City's behalf for expenses related to Forbush's injuries. Pascla points out that Gallagher did not provide any *additional* documentation with regard to five payments in its list totaling more than $2,500.00. Those particular payments are not directly linked to the altercation, but they represent additional medical and disability payments associated with the same course of treatment and in the same time frame as other payments that are directly linked to the altercation. The documentation provided showed a series of claims paid beginning shortly after the assault and continuing until a short time after Forbush's surgery, and that was supported by Forbush's testimony regarding the timing of his treatment. This afforded the trial court a reasonable basis to estimate the amount of the loss, including the payments that were not themselves directly linked but plainly part of the same series of claim payments, and the trial court did not err by rounding downwards to $26,000.00. See State v. Velezmoro, 196 Wn. App. 552, 564, 384 P.3d 613 (2016) (in restitution context, "[e]vidence is sufficient if it affords a reasonable basis to estimate the loss").

III

Pascla next argues that because he lacks the ability to pay it, $26,000.00 in restitution is an unconstitutionally excessive fine. Pascla did not raise this

argument below, and the record is inadequate to determine Pascla's ability to pay restitution. Thus, we decline to reach the merits of Pascla's argument.

Under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." A party may raise a claimed error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). But "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

Here, it is undisputed that Pascla was indigent at sentencing. However, the record does not show he will be unable to pay restitution in the future. Although Pascla asserts on appeal that he has no future ability to pay, he points to no evidence in the record to support that assertion, and he concedes that his projections as to the number of years it may take to fully pay restitution are hypothetical. Furthermore, the record reflects that Pascla has training as a painter and a carpenter, that he can maintain employment in these trades when he is sober, that he will still be relatively young when his term of confinement ends, and that he will receive support from his family at that time. The record before us does not permit review of the question whether Pascla will lack a future ability to pay restitution. This forecloses a finding of manifest constitutional error as required to justify review of an issue raised for the first time on appeal. See State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009) (manifest error inquiry is focused on "whether the error is so obvious on the record that the error warrants appellate review"); cf. State v. Ramos, No. 82818-5-I, slip op. at 7 (Wash. Ct. App. Nov. 7,

11

2022) (reviewing excessive fines claim raised for first time on appeal where defendant was homeless at the time of his underlying offense, had been incarcerated since, and where, based on the record, it was "reasonable to assume . . . that [the defendant] has no current ability to pay restitution and accrued interest and, when released in five years, will have a limited ability to do so"), https://www.courts.wa.gov/opinions/pdf/828185.pdf.

We affirm.

_____
Birk, J.

WE CONCUR:

_____       _____